**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Nina Y. Wang**

Civil Action No. 21-cv-03094-NYW

CARLOS CUESTA,

      Plaintiff,

v.

SMT HOLDINGS LLC,
DONEPUDI HOLDINGS LLC, and
RESOLUTE BREWING COMPANY LLC,

      Defendants.

---

**ORDER GRANTING IN PART AND DENYING IN PART RESOLUTE BREWING
COMPANY, LLC'S MOTION FOR SANCTIONS, ATTORNEY FEES AND COSTS**

---

This matter is before the Court on Resolute Brewing Company, LLC's ("Resolute Brewing" or "Defendant") Motion for Sanctions, Attorney Fees and Costs ("Motion for Sanctions" or "Motion"). [Doc. 50, filed November 10, 2022]. For the reasons that follow, the Court respectfully **GRANTS IN PART and DENIES IN PART** the Motion.

## BACKGROUND

The Court has discussed the background of this case in previous Orders, *see* [Doc. 43; Doc. 48], and will do so here to the extent necessary to resolve the instant Motion. Plaintiff Carlos Cuesta ("Mr. Cuesta" or "Plaintiff") initiated this action on November 18, 2021, seeking remediation of architectural barriers he claims he encountered when he visited a shopping center ("Commercial Property" or "Property"), pursuant to Title III of the Americans with Disabilities Act ("ADA"). *See* [Doc. 1]. Resolute Brewing operates a brewery located at 7286 S. Yosemite Street, #110, Centennial, Colorado 80112, which is located within the Commercial Property. *See*

[Doc. 22 at 3]. Mr. Cuesta asserted two causes of action in the Complaint: Count I was against Defendants SMT Holdings LLC ("SMT") and Donepudi Holdings LLC ("Donepudi"), alleging that those entities failed to comply with the ADA with respect to parking, entrance access, and path of travel features, [Doc. 1 at ¶¶ 22–24]; and Count II was against SMT, Donepudi, and Resolute Brewing, alleging they failed to comply with the ADA regarding "Access to Goods and Services" and the configurations of restrooms, [*id.* at ¶¶ 25–27]. Mr. Cuesta sought injunctive relief pursuant to 42 U.S.C. § 12188 and an award of reasonable attorney's fees and costs pursuant to 42 U.S.C. § 12205. [*Id.* at 11].

Neither SMT nor Donepudi answered or otherwise responded to the Complaint, and the Clerk of the Court entered default against these two entities on February 28, 2022. [Doc. 18]. Then, Mr. Cuesta and Resolute Brewing proceeded to a Scheduling Conference, and this Court entered a Scheduling Order on March 8, 2022. [Doc. 21; Doc. 22]. The Scheduling Order set a deadline for Joinder of Parties and Amendment of Pleadings of March 15, 2022; a deadline for discovery of June 8, 2022; and a dispositive motions deadline of July 8, 2022. [Doc. 22 at 6]. In addition, the Court ordered Plaintiff to disclose any experts and provide opposing counsel with the information required by Rule 26(a)(2) not later than March 24, 2022. [*Id.* at 7]. Further, all motions brought pursuant to Rule 702 of the Federal Rules of Evidence challenging expert opinions were due on June 15, 2022. [*Id.* at 8].

***Plaintiff's Experts.*** Relevant here, in his Rule 26 initial disclosures, Plaintiff disclosed (1) Howard Schneider ("Mr. Schneider"), a certified public accountant who was "expected to testify as to the financial ability of the Defendant to bring the property into ADA compliance"; and (2) Gene Mattera ("Mr. Mattera"), who would allegedly testify as "Plaintiff's expert on Title III of the ADA, its regulations and guidelines, and their application to the facilities and business

2

that are the subject of the instant lawsuit." [Doc. 26-1 at 2–3]. The subject matter of Mr. Mattera's testimony was "to identify the ADA violations *referred to in the Complaint*" and his written reports regarding same. [*Id.* at 3 (emphasis added)]. Mr. Mattera subsequently provided a summary report, [Doc. 26-2], wherein he purported to "indicate architectural barriers encountered on [September 11, 2021] by the individual plaintiff, Carlos Cuesta." [*Id.* at 1].

**The Motion to Strike.** On June 8, 2022, Resolute Brewing filed a motion to strike in their entirety the opinions of Mr. Schneider and Mr. Mattera pursuant to Federal Rule of Evidence 702 and Federal Rule of Civil Procedure 37(c)(1). [Doc. 26 ("Motion to Strike")]. Specifically, Resolute Brewing argued that Plaintiff had not provided any report for Mr. Schneider and that the expert report for Mr. Mattera was deficient. [*Id.* at 6–10]. As part of its argument, Resolute Brewing contended that the opinions offered by Mr. Mattera were unreliable on their face because the photographs taken of the restrooms were not the restrooms on Resolute Brewing's property. [*Id.* at 8 ("These pictures, however, are irrelevant and/or unreliable . . . because they are not even Resolute's property.")]. In addition, Resolute Brewing also argued that as a tenant, it was not liable for any alleged violations of the ADA occurring in the "parking lot" on the Property because that area is controlled by the landlord, and not the tenant, as a matter of law. [*Id.* at 9].

**The Motion for Summary Judgment.** On July 8, 2022 (the dispositive motions deadline), Resolute Brewing filed a Motion for Summary Judgment, arguing, *inter alia*, that judgment in its favor was appropriate based on the fact that the photographs in Mr. Mattera's report did not depict Resolute Brewing's restrooms, and that it could not be liable for any deficiencies in the parking lot because it is a "common area" of the Commercial Property. *See* [Doc. 30 at 2–7]. Resolute Brewing also submitted what it claimed was a "[t]rue and correct photo of the outdoor patio" associated with its business. [*Id.* at ¶ 8]; *see also* [Doc. 30-6]. In addition, Resolute Brewing

argued that Mr. Cuesta lacked standing to maintain his claims against it under Count II.  [Doc. 30 at 2, 9–10].

After two extensions of time, Mr. Cuesta responded to the Motion to Strike on July 14, 2022, *see* [Doc. 33], wherein he withdrew any reliance on Mr. Schneider's opinions.  [*Id.* at 1]. With respect to Resolute Brewing's argument regarding the erroneous restroom photographs in Mr. Mattera's report, on the other hand, Mr. Cuesta did not explain any discrepancy—instead, he represented that "Plaintiff's counsel verbally communicated to Defendant's counsel that Plaintiff would not pursue to [sic] issues with Defendant's restroom."  [*Id.* at 7].  However, Mr. Cuesta argued that "[i]rrespective of the issue of the bathroom pictures," Mr. Mattera's report was relevant and reliable because "Plaintiff also alleged that Defendant's seating and exterior recreational areas were inaccessible to disabled patrons, like Plaintiff."  [*Id.*].  Specifically, Mr. Cuesta insisted that Resolute Brewing was "responsible for the exterior areas that it exercises control over" related to the "Parking Lot," explaining as follows:

> Defendant has placed tables in the exterior area and presumably exercises control over the area, and therefore has the ability to remedy any non-compliance with the ADA.  The tables and seating are in the parking lot and pathways.  Moreover, Defendant took over the portion of the parking and common area, and it is unclear what the scope of Defendant's responsibilities are over the exterior common areas, as it controls at least some of the exterior premises at issue.

[*Id.*].  Mr. Cuesta further indicated that he would "more fully brief this issue in its [sic] response to Defendant's motion for summary judgment."  [*Id.*].

Given that Resolute Brewing filed the Motion for Summary Judgment on July 8, 2022, Mr. Cuesta's response was due July 29, 2022.  *See* D.C.COLO.LCivR 7.1(d) ("The responding party shall have 21 days after the date of service of a motion, or such lesser or greater time as the court may allow, in which to file a response.").  However, on July 29, 2022, instead of responding to Defendant's Motion for Summary Judgment, Mr. Cuesta filed a "Motion for Leave to Voluntarily

4

Dismiss the Claims Against Resolute Brewing Company LLC" ("Motion to Dismiss"). [Doc. 36]. Therein, Mr. Cuesta stated that his counsel had "attempted to dismiss the case against Resolute Brewing . . . via stipulation but Defendant [would] not agree to the language in the stipulation." [*Id.* at ¶ 3]. Notably, Mr. Cuesta also represented that:

> Plaintiff revisited the Defendant property and found that Defendant Resolute Brewing Company LLC's business was *mostly remediated* and Plaintiff does not wish to continue to pursue the claims as to Defendant Resolute Brewing Company LLC.

[*Id.* at ¶ 6 (emphasis added and capitals omitted)]; *see also* [Doc. 42 at 1 (claiming that he "visited the Defendant Resolute Brewing Company LLC's establishment [on July 29, 2022] and was satisfied with the state of the establishment during his visit") (capitals omitted)]. In addition, Mr. Cuesta noted that "Defendant ha[d] expressed an interest in seeking fees," an issue which Plaintiff asserted "can be resolved via a separate motion, should Defendant choose to file one." [Doc. 36 at 3 n.2].[1] The same day, Mr. Cuesta moved for an extension of time to respond to the Motion for Summary Judgment, [Doc. 37], which the Court granted, *see* [Doc. 38], thus allowing Plaintiff additional time to respond, up to and including August 12, 2022. On August 12, Plaintiff sought a second extension of time to respond to the Motion for Summary Judgment, [Doc. 41], which the Court subsequently granted, allowing Plaintiff until September 2, 2022 to respond, *see* [Doc. 43 at 12].

***The Court's August 29, 2022 Order.*** On August 29, 2022, the Court entered an Order, *inter alia*, granting Defendant's Motion to Strike and denying Plaintiff's Motion to Dismiss. [Doc. 43]. In that Order, the Court determined that Mr. Cuesta had "never asserted a cause of action

---

[1] In Resolute Brewing's response to Plaintiff's Motion to Dismiss, it indicated that it did not oppose the dismissal of Plaintiff's claims but argued that it was entitled to attorney's fees and costs pursuant to 28 U.S.C. § 1927. [Doc. 40 at 1].

against Resolute Brewing Company based on either its exterior seating, the parking lot, or the pathways." [*Id.* at 8].[2]   The Court also noted that "the operative Complaint in this matter misidentifies Resolute Brewing Company as a 'hotel business' in one instance and *makes no mention of seating.*" [*Id.* (emphasis added) (citation omitted)].   Therefore, the Court found that Plaintiff's "sole cause of action" against Resolute Brewing related only to the alleged noncompliant restrooms, and "[a]ny other theory of liability [did] not appear viable." [*Id.* at 10]. In granting Defendant's Motion to Strike in its entirety, the Court precluded Mr. Cuesta "from offering any of Mr. Mattera's opinions vis-à-vis Resolute Brewing Company's liability under the ADA <u>for any purpose</u>." [*Id.* at 8].

Additionally, in denying Plaintiff's Motion to Dismiss, the Court acknowledged, *inter alia*, that Resolute Brewing indicated its intent to seek sanctions pursuant to 28 U.S.C. § 1927 based on

> certain concerns regarding Plaintiff's and/or his counsel's conduct in this action, including continuing to pursue claims related to the purported non-compliant bathroom after (1) December 14, 202[1], when counsel for Resolute Brewing Company informed Mr. Cuesta's counsel that the restroom was in compliance; and (2) January 11, 2022, when Defendant affirmatively indicated that the photographs in the expert report were not Resolute Brewing Company's.

[*Id.* at 10 (citations omitted)].   The Court further explained that Mr. Cuesta had failed to "adequately address—either in his Response to the Motion to Strike or in his Motion to Dismiss— Defendant's argument that the photographs in Mr. Mattera's report are not of Resolute Brewing Company's bathroom, and that he was provided the photographs of the bathroom and informed of the discrepancy in the expert report no later than January 2022." [*Id.* at 11].   In addition, the Court

---

[2] As noted above, in response to the Motion to Strike, Mr. Cuesta argued that "[i]rrespective of the issue of the bathroom pictures," Mr. Mattera's report was relevant and reliable because "Plaintiff also alleged that Defendant's seating and exterior recreational areas were inaccessible to disabled patrons, like Plaintiff"; and insisted that  Resolute Brewing was "responsible for the exterior areas that it exercises control over" related to the "Parking Lot." [Doc. 33 at 7].

found that, despite Plaintiff's claim in the Motion to Dismiss that Resolute Brewing's "business was mostly remediated" when Plaintiff revisited the Property, *see* [Doc. 36 at ¶ 6], he failed to "identify *which* alleged violations he found were 'mostly remediated' . . . and what alleged violations remain outstanding." [Doc. 43 at 11]. Based on the foregoing, the Court concluded that "there would be legal prejudice in dismissing this action against Resolute Brewing Company without prejudice and that it [was] more appropriate to resolve this issue in the context of summary judgment." [*Id.*]. The Court ordered Mr. Cuesta to respond to the Motion for Summary Judgment and "address, at a minimum, the issues identified" in the Order. [*Id.* at 12]. The Court also scheduled a hearing on the Motion for Summary Judgment, as well as Defendant's request for fees and costs pursuant to 28 U.S.C. § 1927. [*Id.*]; *see also* [Doc. 40 at 1].

**Plaintiff's Response to the Motion for Summary Judgment.** Mr. Cuesta responded to the Motion for Summary Judgment on September 2, 2022. [Doc. 45]. Therein, he expressed that his "equivocation in his motion to dismiss and language referencing 'mostly remediated' was in reference to the policies and procedures of Defendant and the fact that the seating itself remains inaccessible, particularly to persons such as Plaintiff who often ambulates in a mobility scooter." [*Id.* at 6]. Mr. Cuesta also maintained that a portion of his claims against Resolute Brewing remained viable because Resolute Brewing "operates an exterior patio/recreational area, which it exercises control [over]." [*Id.*]. Mr. Cuesta described what he called the "exterior patio/recreational area" and further explained his basis for claiming that the alleged barriers at Resolute Brewing were "mostly remediated" when he revisited the Property, as follows:

> Photographs of the outdoor seating/recreation area demonstrate that it extends into the parking area, and indeed demonstrates a car parked right next to the seating/recreation area. When Plaintiff Carlos Cuesta[] revisited the property on July 29, 2022, he found that the outdoor seating recreational [sic] had improved, but the seating remained inaccessible. . . . Defendant Resolute's patrons can and do[] use the outdoor recreation/seating area which extends into the parking lot, as

> a part of their patronage at Resolute. In fact, Defendant's own social media page
> is replete with examples of Defendant exercising the use and control of the outdoor
> recreation areas, including the landscaped area near the parking lot. . . . Even
> Defendant's own webpage advertises its "expansive patio." . . . [Other] pictures
> demonstrate that this outdoor recreation area extends outside its paved outdoor area,
> down several steps, and into the grassy area and parking lot. . . .
>
> While the seating itself remains inaccessible, the accessibility issues had improved
> when Mr. Cuesta re-visited, as there were less obstacles that interfered with the
> area, however it can easily re-occur and worsen the noncompliance with the ADA if
> Defendant or its employees[] rearrange the seating in a non-compliant manner. . . .
> [I]t is unclear what policies or procedures, if any, Defendant has in place regarding
> the seating area to ensure current and future compliance. . . .
>
> Defendant, for its part, does not address these issues. It alleges that it is not
> responsible for the exterior areas, but it clearly controls at least portions of them.
> Even Defendant's own motion for summary judgment includes a partial picture of
> the outdoor area with the non-compliant seating and a tent clearly visible;
> Defendant even refers to the area as "the outdoor patio associated with suite 110".

[*Id.* at 6–8 (citations and footnote omitted)]. Mr. Cuesta also insisted that the Motion for Summary

Judgment was "silent as to the issue raised in the Complaint in ¶27(A)(i)"—i.e., that "Recreational

areas at the Commercial Property for public use lack required disabled use elements, preventing

use by Plaintiff," [Doc. 1 at ¶ 27.A.i]—and "material issues of fact remain[ed] as to the ADA

violations found in the exterior seating/recreation area at Defendant's place of public

accommodation" that Resolute Brewing ignored. [Doc. 45 at 8–9]; *see also* [*id.* at 8 (arguing that

Defendant was "playing a game of 'gotcha' and trying to take advantage of an honest error to

deflect attention away from the legitimate accessibility issues with its property")].

In addition, Mr. Cuesta submitted an affidavit wherein he further explained what he meant

when he stated in the Motion to Dismiss that Resolute Brewing's "business was mostly

remediated":

> When I visited the property on July 29, 2022, I noticed that the issue with the seating
> area being inaccessible was not as bad as on a prior visit, yet much of it, specifically
> the outdoor seating going to the parking area remained inaccessible. . . . When
> later, I was contacted by my attorneys, I informed them that a portion of the outdoor
> patio area was more or less accessible from the interior, even though the seating

was not usable in a mobility scooter. . . . [T]he type of seating available remains inaccessible to persons using a mobility scooter and they do not appear to have done anything regarding the tables and seating in the parking area.

[Doc. 45-1 at ¶¶ 6, 8].

*The Summary Judgment Hearing.* On September 12, 2022, the Court held the hearing on the Motion for Summary Judgment. *See* [Doc. 46; Doc. 47]. At the hearing, the Court explained that, upon comparing Plaintiff's response to the Motion for Summary Judgment to the allegations in the Complaint, it was not apparent that Mr. Cuesta "was trying to capture any sort of outdoor seating area" in Paragraph 27.A.i. of the Complaint; and Defendant's "Motion for Summary Judgment [did not] specifically talk about the outdoor seating area," but instead "talk[ed] about public access issues; the parking lot and other entrance issues." [Doc. 47 at 3:8–13].[3]

Resolute Brewing argued that it did not address outdoor seating specifically in the Motion for Summary Judgment because it was not identified in the Complaint. [*Id.* at 5:5–7]. It maintained that the Complaint mentioned a "recreational area" under Paragraph 27.A.i, but it "had no idea" what "recreational area" on the Property that Plaintiff was referring to, and therefore it requested clarification from Plaintiff regarding this area "as early as December of 2021." [*Id.* at 5:7–13]. In addition, Resolute Brewing did not understand "recreational area" to mean an "outdoor seating area" or "patio," as Plaintiff had argued in response to the Motion for Summary Judgment. [*Id.* at 5:18–21]; *see also, e.g.*, [Doc. 45 at 7–8]. Resolute Brewing apparently sought to identify and "fix [the violations] in a timely manner, period." [Doc. 47 at 5:21–24]. However, according

---

[3] As previously mentioned, Paragraph 27.A.i of the Complaint concerned the only remaining claim against Resolute Brewing regarding "Access to Goods and Services," under which Mr. Cuesta only alleged, without any further information, that "[r]ecreational areas at Commercial Property for public use lack required disabled use elements, preventing use by Plaintiff, violating the ADAAG." [Doc. 1 at ¶ 27.A].

to Resolute Brewing's counsel, the identity of the specific barriers in the "recreational areas" referenced in the Complaint became more confusing upon review of Mr. Mattera's report, given that it contained (1) photos of an incorrect restroom that did not belong to Resolute Brewing; and (2) "a photo of a tent area with picnic tables during the pandemic where people are sitting outside." [*Id.* at 5:25–6:4]; *see also* [Doc. 26-2 at 8].  Resolute Brewing insisted that the photo of the "tent area with picnic tables" (also called the "turf area") in Mr. Mattera's report is different from the photo of Resolute Brewing's "outdoor patio" that it attached to the Motion for Summary Judgment. [Doc. 47 at 6:3–9]; *compare* [Doc. 30-6 (Resolute Brewing's patio photo)] *with* [Doc. 30-1 at 8 (Mr. Matterra's photo of the "Recreational" or "turf" area in the report, which he also called "Outdoor Dining Areas")].[4]   Specifically, Resolute Brewing clarified that the turf area photographed in Mr. Mattera's report was located "adjacent to" and down the stairs from the outdoor patio.  [Doc. 47 at 8:16–9:1].

The Court acknowledged the difference between Defendant's outdoor patio photo and the turf area photographed in Mr. Mattera's report.  [*Id.* at 6:2–13].  However, the Court also noted that Resolute Brewing did not address the turf area at all—which Plaintiff discussed in his response to the Motion for Summary Judgment—even though it was photographed in Mr. Mattera's report. [*Id.* at 6:15–21].  Resolute Brewing conceded that it did not address photo of the turf area in Mr. Mattera's report, but proceeded to argue that the turf area is a "common area" that Resolute Brewing does not own or control and, therefore, Resolute Brewing could not be liable for that area. [*Id.* at 6:22–7:3, 8:12–10:5]; *see also* [Doc. 30 at 6–7 (in the Motion for Summary Judgment,

---

[4] Again, the single photo in Mr. Mattera's report was the only photo that identified the "[r]ecreational areas at Resolute Brewing for public use [that] lack required disabled use elements," as alleged by Mr. Cuesta in the Complaint.  [Doc. 1 at ¶ 27.A].

arguing that "Resolute cannot be held liable for any deficiencies in the parking lot, a common area in a multi-tenant shopping center as a matter of law")]. Resolute Brewing also claimed that it engaged in "a protracted effort [with Plaintiff], for 6 or 7 months, to understand what violations existed on th[e] property" given that Mr. Mattera's report contained incorrect photos of the restroom—i.e., the location of the majority of the claims that Plaintiff conceded he improperly asserted against Resolute Brewing in the first instance—but Plaintiff never attempted to clarify his claims until his response to the Motion for Summary Judgment. [Doc. 47 at 10:11–22].

Mr. Cuesta disagreed that Resolute Brewing lacked notice of the specific barriers in the "recreation area" alleged in the Complaint. Plaintiff's counsel, Mr. Anthony Perez, offered the following explanation:

> When asked in with [sic] regards to the exterior and the recreation area that forms the exterior seating and the turf area, there are emails where [Resolute Brewing's counsel] admits that -- he calls it an "overflow exterior seating area" and, you know, he talks about -- it's not clear to me what barriers there are on the turf and yard that Resolute has a right to control.
>
> They were aware that we are seeking those at that point. We had had quite a few conversations at that point. There is another email that says, "I will get a current photo of the outside seating area that is accessible, as we discussed. The porch can be seen above the red Lexus in your expert's report."

[*Id.* at 13:8–20]. Mr. Perez stated he was "surprised to see in the Summary Judgment Motion that [Defendant was] focus[ing] on the parking area" because Plaintiff "never alleged" Resolute Brewing was "responsible for the parking area." [*Id.* at 13:21–24]. Mr. Perez also addressed Resolute Brewing's assertion regarding the stairs between its outdoor patio, [Doc. 30-6], and the turf area referenced in the Complaint and Mr. Mattera's report, respectively, [Doc. 1 at ¶ 27.A.i; Doc. 30-1 at 8]. He contended that violations remained on the Property because "there is no ramp to go into that area, either." [Doc. 47 at 14:17–20]; *see also* [*id.* at 17:3 ("There are no ramps from the patio down into the turf area.")]. He also stated there was "no mention of any path within the

11

turf area," arguing that individuals similar to Plaintiff could not "even get inside" and "they are kept at the curb, basically." [*Id.* at 17:5–7]. Mr. Perez insisted that Resolute Brewing had "yet to address or remediate the access from their patio to the turf area or even access to the turf area or within the turf area." [*Id.* at 18:11–13]; *see also* [*id.* at 34:3–6 ("There are still issues in this case that haven't been resolved; namely dealing with the recreation or exterior patio area, which on its face appears to be easily half of this facility.")].

Resolute Brewing countered that "this case has been amorphous from the beginning," arguing that Defendant was "hearing for the first time that there is an expectation that ramps and curbs need to be put into the turf area[.]" [*Id.* at 20:1–6]. Counsel for Resolute Brewing contended that the allegations against Resolute Brewing under Paragraph 27 of the Complaint did not "even satisfy pre-*Twombly* pleading requirements with respect to notice." [*Id.* at 21:10–12]. However, the Court found that Resolute Brewing's argument regarding whether Plaintiff had sufficiently identified the barriers in the Complaint was improper at the motion for summary judgment stage. [*Id.* at 21:3–21]. At the conclusion of the hearing, the Court permitted Resolute Brewing to file a "separate and distinct motion [for sanctions] under 28 U.S.C. [§] 1927." [*Id.* at 35:9–13].

***Order Granting Motion for Summary Judgment.*** On October 27, 2022, the Court issued an Order granting summary judgment in favor of Resolute Brewing on the basis that Mr. Cuesta lacked standing to maintain his claims. [Doc. 48]. In so granting, the Court did not address any of Mr. Cuesta's follow-up responses as to the alleged "mostly remediated" barriers he encountered when he revisited Resolute Brewing, or the irregularities regarding Plaintiff's claims against Resolute Brewing in the Complaint, whether related to the restrooms or otherwise. *See* [*id.* at 8 ("Because Resolute Brewing challenges Mr. Cuesta's standing—a jurisdictional issue—the Court

begins and ends its analysis there, as this issue is dispositive of the instant Motion." (citation omitted))].

*Motion for Sanctions.* On November 10, 2022, Resolute Brewing filed the instant Motion for Sanctions, wherein it seeks the following relief:

> (1) . . . an award of its attorney fees, costs, and expenses of the litigation, (2) sanctions against Plaintiff and its counsel, (3) . . . a Show Cause Order as to why Respondents should not be disgorged of all monies their enterprise derived from their sham litigation in the District of Colorado, and (4) . . . such other relief as [the Court] deems necessary and appropriate to remedy [Plaintiff's, Mr. Perez's, and Mr. Mattera's] misconduct in this judicial district and Colorado.

[Doc. 50 at 18–19].   Defendant requests this relief pursuant to 28 U.S.C. § 1927, 42 U.S.C. § 12205, Federal Rule of Civil Procedure 11, and the Court's inherent authority. *See* [*id.* at 1–9]. Plaintiff responded in opposition to the Motion. *See* [Doc. 54].  Defendant did not seek leave to file a reply, and the time to do so has long passed. *See* [Doc. 48 at 19].  The Motion for Sanctions is thus ripe for determination, and the Court addresses the Parties' arguments below.

## LEGAL STANDARD

### I.   42 U.S.C. § 12205

Title 42 U.S.C. § 12205 provides that, in ADA cases, "the court or agency, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee, including litigation expenses, and costs." 42 U.S.C. § 12205; *see also Kelley v. Smith's Food & Drug Ctrs., Inc.*, 793 F. App'x 787, 791 (10th Cir. 2019).  In *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412 (1978), the Supreme Court held that a district court may only "award attorney's fees to a prevailing defendant in a Title VII case upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation."  *Id.* at 421.  The Tenth Circuit has determined that this standard "applies as well to the recovery of attorney's fees by prevailing defendants in ADA actions." *Twilley v. Integris Baptist Med. Ctr., Inc.*, 16 F. App'x 923, 926 (10th Cir. 2001).

## II.     Federal Rule of Civil Procedure 11

Rule 11(b) of the Federal Rules of Civil Procedure provides:

(b) Representations to the Court.  By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;

> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and

> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed. R. Civ. P. 11(b).  The aim of Rule 11 is to deter sanctionable conduct rather than compensate the opposing party, and thus an appropriate sanction under Rule 11 must be tailored to this purpose and may include attorney's fees and other expenses arising from the violation.  *See Grynberg v. Ivanhoe Energy, Inc.*, 663 F. Supp. 2d 1022, 1025 (D. Colo. 2009).  The Tenth Circuit has held that a court must consider "whether a reasonable and competent attorney would believe in the merit of an argument" to determine if an attorney's actions warrant sanctions under Rule 11.  *Dodds Ins. Servs., Inc. v. Royal Ins. Co. of Am.*, 935 F.2d 1152, 1155 (10th Cir. 1991).

## III.    28 U.S.C. § 1927

28 U.S.C. § 1927 "targets the vexatious and unreasonable multiplication of proceedings," and imposes sanctions on attorneys for certain misconduct.  *Steinert v. Winn Grp., Inc.*, 440 F.3d 1214, 1222 (10th Cir. 2006).  Specifically, § 1927 provides:

14

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927. "An attorney's actions are considered vexatious and unreasonable under § 1927 if the attorney acted in bad faith," *Dreiling v. Peugeot Motors of Am., Inc.*, 768 F.2d 1159, 1165 (10th Cir. 1985), or if the attorney's conduct constitutes a reckless disregard of the duty owed by counsel to the court. *Braley v. Campbell*, 832 F.2d 1504, 1511–12 (10th Cir. 1987).

Whether to impose sanctions under § 1927 is a decision the Court does not take lightly. *See DMA Int'l, Inc. v. Qwest Commc'ns Int'l, Inc.*, 585 F.3d 1341, 1345 (10th Cir. 2009). Sanctions under § 1927 may be appropriate when "counsel repeatedly refers to facts in the record that simply are not there"; counsel raises issues already addressed by the court or other courts; counsel obfuscates "the legal issues" and complicates the opposing party's and the court's ability to "sort them out"; or "submits rambling briefs" and "cites to inapplicable or irrelevant authorities" or "misrepresents facts or law to the court." *Lewis v. Circuit City Stores, Inc.*, 500 F.3d 1140, 1153 (10th Cir. 2007) (brackets and citations omitted). Sanctions under § 1927 are also appropriate when "an attorney is cavalier or bent on misleading the court; intentionally acts without a plausible basis; [or] when the entire course of proceedings was unwarranted." *Miera v. Dairyland Ins. Co.*, 143 F.3d 1337, 1342 (10th Cir. 1998) (internal quotations and citations omitted). However, the complaint "that gives birth to the proceedings" is excluded from § 1927 because "it is not possible to multiply proceedings until *after* those proceedings have begun." *Steinert v. Winn Grp., Inc.*, 440 F.3d 1214, 1225 (10th Cir. 2006). Ultimately, "any conduct that, viewed objectively, manifests either intentional or reckless disregard of the attorney's duties to the court, is

sanctionable." *Hamilton v. Boise Cascade Express*, 519 F.3d 1197, 1202 (10th Cir. 2008) (quotation omitted).

"Before awarding sanctions pursuant to § 1927, a court must make 'specific findings' identifying 'the extent of the multiplicity resulting from the attorney's behavior and the costs arising therefrom,' as well as describing the 'objectionable conduct' in sufficient detail to permit a meaningful response and facilitate appellate review." *Crocs, Inc. v. Effervescent, Inc.*, No. 06-cv-00605-PAB-KMT, 2017 WL 4368158, at *2 (D. Colo. Sept. 30, 2017) (quoting *Braley*, 832 F.2d at 1513).

## IV.   The Court's Inherent Authority

Finally, the Court has the "inherent authority" to impose sanctions against an attorney who "has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Hutchinson v. Pfeil*, 208 F.3d 1180, 1186 (10th Cir. 2000). This authority also "includes the ability to fashion an appropriate sanction for conduct which abuses the judicial process." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44–45 (1991)). However, the United States Supreme Court has repeatedly cautioned that sanctions fashioned by federal courts premised on the court's inherent authority may not be punitive in nature. *See, e.g.*, *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 108 (2017); *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 826–30 (1994). Instead, this Court is tasked with selecting "the least severe sanction appropriate to address the conduct" at issue. *HT Holdings of Colo., LLC v. Karndean Int'l, LLC*, No. 17-cv-01926-MSK-KLM, 2018 WL 11220397, at *2 (D. Colo. Nov. 13, 2018) (citing *103 Invs. I, L.P. v. Square D Co.*, 470 F.3d 985, 988–89 (10th Cir. 2006)).

## ANALYSIS

Resolute Brewing argues it is the prevailing party and Mr. Cuesta's case was frivolous, unreasonable, and without foundation. *See generally* [Doc. 50]. Specifically, Resolute Brewing

contends that Plaintiff was aware of the standard to state a claim for relief based on his extensive ADA litigation and had no basis to continue to litigate the case after Defendant's counsel notified Plaintiff's counsel of the defects in Mr. Mattera's report regarding the misidentification of the restrooms.  [*Id.* at 7–9, 11, 15–16]; *see also* [*id.* at 13 ("Respondents . . . should have promptly withdrawn their claim against Resolute Brewing once photos were presented to them that they had the wrong establishment in January 2022.")].  Defendant also claims that Plaintiff and Mr. Perez "likely knew, and certainly should have known, before filing this action that they lacked standing and that they had no evidence of an actual ADA violation which Resolute Brewing is responsible for as a matter of law."  [*Id.* at 13].

Mr. Cuesta responds that his case was not frivolous because, notwithstanding the restrooms, "there were ADA violations on Defendant's property which Plaintiff sought remedial action for, specifically the outdoor recreational/patio area which remains in violation of the ADA to this day."  [Doc. 54 at 11–13]; *see also* [*id.* at 17].  Mr. Cuesta also argues, *inter alia*, that the award sought is excessive and Plaintiff has no means to pay attorneys' fees.  [*Id.* at 20].

## I.    Prevailing Party

The Court first addresses whether Resolute Brewing is a "prevailing party" that is entitled to "a reasonable attorney's fee, including litigation expenses, and costs" under the ADA.  42 U.S.C. § 12205.  Resolute Brewing asserts, and Plaintiff does not dispute, that it is the prevailing party because the Court granted its Motion for Summary Judgment.  [Doc. 50 at 8].  The Court agrees that Defendant is the prevailing party in this case, even though the Court granted summary judgment and dismissed Plaintiff's remaining claim against Defendant "without prejudice for lack of standing."  [Doc. 48 at 16–17]; *see Brito v. Denver Convention Ctr. Hotel Auth.*, No. 20-cv-02719-PAB-KMT, 2022 WL 3585646, at *2 (D. Colo. Aug. 22, 2022) (finding that the defendants were "the prevailing party . . . despite the fact that the dismissal was without prejudice" where the

court dismissed the plaintiff's ADA Title III suit for lack of standing, and finding instructive the Ninth Circuit's holding "that dismissing a case for lack of subject-matter jurisdiction was 'a significant victory and permanently changed the legal relationship of the parties'" (quoting *Amphastar Pharms. Inc. v. Aventis Pharma SA*, 856 F.3d 696, 709–10 (9th Cir. 2017))].

## II.     Frivolousness

The Court next turns to Resolute Brewing's arguments that this case was "frivolous, unreasonable, or without foundation." *Christiansburg*, 434 U.S. at 421.  This standard is "met when a party utterly fails to produce *any* evidence in support of material issues necessary to withstand summary judgment." *Twilley*, 16 F. App'x at 926.  "The district court should not, in hindsight, characterize a plaintiff's case as frivolous simply because it was ultimately unsuccessful." *Carlile v. Conoco, Inc.*, 23 F. App'x 963, 967 (10th Cir. 2001).

Resolute Brewing's arguments in the Motion fall generally under two categories: (1) that Plaintiff, Mr. Perez, and Mr. Mattera are part of an "illicit joint enterprise"; and (2) that this case was frivolous and based on intentional, false representations to the Court.  *See* [Doc. 50 at 2–18]. The Court will address each category in turn.

### A.     "Illicit Joint Enterprise"

First, Resolute Brewing argues that "[t]his case reveals an illicit joint enterprise between" Plaintiff, Mr. Perez (his attorney), and Mr. Mattera (his designated expert), "all of whom likely share in the bounty derived from their boilerplate, sham ADA lawsuits."  [Doc. 50 at 2].  For support, Resolute Brewing contends, *inter alia*, that these individuals "file these [ADA] cases alleging fake injuries with fake stories about intent to return and simply dismiss the cases if they are ever asked to produce evidence showing that they are not shams."  [*Id.* at 17].  Resolute Brewing argues that Plaintiff, Mr. Perez, and Mr. Mattera have acted, and continue to act, for the purpose of "tricking defendants into thinking they are violating the law and extorting a fee from

them for [Plaintiff, Mr. Perez, and Mr. Mattera] to share amongst themselves as a business venture and outside of the remedies of the ADA."  [*Id.*].  Resolute Brewing further urges that "[n]either this case, nor the other cases that Messrs. Cuesta and Perez file, are about 'access,'" but instead "are about deriving nuisance value settlements as quickly as possible in cases that are small enough that the nature of the scheme is not revealed."  [*Id.* at 2]; *see also* [*id.* at 13 ("Respondents know that most defendants 'pay' and that their scheme goes on because few businesses can afford to expose these cases for what they are.  It is not about *access*, it is about money.")].

In response, Mr. Cuesta counters that Resolute Brewing's "illicit joint enterprise" theory lacks any evidentiary or factual basis.  *See* [Doc. 54 at 2–3 ("Mr. Cuesta is not paid for his participation in any of the lawsuits, nor does he receive a share of the attorney's fees collected by Mr. Perez or the firm of Garcia-Menocal & Perez, and the Defendant has not provided one scintilla of evidence to substantiate this spurious allegation.")].

The Court declines to award fees or costs, or issue any other sanctions, with respect to Resolute Brewing's "illicit joint enterprise" theory.  To be certain, this Court would be concerned with any such arrangement between Mr. Cuesta, Mr. Perez and Mr. Mattera designed to extract unwarranted settlements from facilities.  But Resolute Brewing's arguments are not supported by sufficient evidence that establishes the existence of the illicit enterprise alleged.  Indeed, Resolute Brewing implicitly concedes that it does not have any sufficient evidence to demonstrate such an illicit enterprise in this case.  *See* [Doc. 50 at 2 ("The true scope of the scheme would require an investigation which Resolute Brewing should not have to pay for, discovery, and a show cause evidentiary hearing.")].[5]

---

[5] Resolute Brewing also references a Recommendation (discussed further below) issued by a magistrate judge in another case to argue that the judge "expressed serious concerns" that there

B.      **Lack of Foundation/False Representations**

Next, Resolute Brewing argues that this case was frivolous in that it was based on intentional, false representations to the Court.  *See* [Doc. 50 at 2–18].  Resolute Brewing identifies five instances of  allegedly false representations made by or on behalf of Plaintiff, related to (1) Plaintiff's standing, or lack thereof, to assert his claims; (2) whether Plaintiff is actually disabled; (3) a case that Mr. Perez allegedly misrepresented to the Court during the hearing on the summary judgment hearing; (4) the restroom photos in Mr. Mattera's report; and (5) Plaintiff's claim in the Motion to Dismiss, [Doc. 36], that he revisited the Property and found that Resolute Brewing had been "mostly remediated."  [Doc. 50 at 7, 11–15].  At the outset, the Court is not persuaded by Defendant's arguments that this case was frivolous, unreasonable, or lacked foundation based on point nos. 1, 2, or 3 above.  The Court will briefly address each of those arguments.

*First*, Resolute Brewing claims that Plaintiff, Mr. Perez, and Mr. Mattera "likely knew, and certainly should have known, before filing this action that they lacked standing and that they had no evidence of an actual ADA violation which Resolute Brewing is responsible for as a matter of law."  [*Id.* at 13]; *see also* [*id.* at 15].  Apart from the restroom issue, however, this Court did not address whether or not Plaintiff had "evidence of an actual ADA violation" at Resolute Brewing, nor did it address the merits of Plaintiff's claims generally.  *See* [Doc. 48 at 7–8].  Specifically, in granting Defendant's Motion for Summary Judgment, the Court noted Resolute Brewing's arguments that Mr. Cuesta had "failed to produce any evidence of either (i) a violation

---

"appears to be *indicia* that [Plaintiff was] sharing in settlement proceeds with his legal counsel in order to fund the enterprise . . . with respect to these types of cases."  [Doc. 50 at 15].  However, that judge's concern about the *appearance* of *indicia* of an illicit joint enterprise does not constitute sufficient evidence to support its existence.

on the property which Resolute controls or (ii) actual injury and, therefore, lacks standing to bring this subject action." [*Id.* at 8 (quoting [Doc. 30 at 2])]. However, the Court then explained that "[b]ecause Resolute Brewing challenges Mr. Cuesta's standing—a jurisdictional issue—the Court begins and ends its analysis there, as this issue is dispositive of the instant Motion." [*Id.* (citation omitted)].

Likewise, although Resolute Brewing insists that Mr. Cuesta lacked any "evidence of an actual ADA violation which Resolute Brewing is responsible for as a matter of law," [Doc. 50 at 13], this argument goes to the merits of Plaintiff's claims; and, again, it ignores that this Court did not address the issue of whether Resolute Brewing is "responsible for" the recreational area—i.e., the areas identified under Paragraph 27.A.i of the Complaint and in Mr. Mattera's report. *See* [Doc. 48]. Moreover, unlike the irregularities as to Plaintiff's claims regarding the restrooms, the Court cannot, and need not, decide whether Resolute Brewing's defense of disclaiming responsibility would have been successful. And, even so, Resolute Brewing's argument presupposes that Mr. Cuesta *knew* (1) that Resolute Brewing, as a tenant, could not be held liable for any deficiencies in the common areas of the Commercial Property; and (2) which specific areas of the Property constituted common areas. In sum, the record in this case does not support Resolute Brewing's argument that Plaintiff lacked any "evidence of an actual ADA violation which Resolute Brewing is responsible for as a matter of law," [Doc. 50 at 13], and Resolute Brewing's attempt to reargue the merits of Plaintiff's claims in the instant Motion is improper. *See Carlile*, 23 F. App'x at 967 ("The district court should not, in hindsight, characterize a plaintiff's case as frivolous simply because it was ultimately unsuccessful.").

**Second**, Resolute Brewing challenges whether Mr. Cuesta is actually "an individual with disabilities" under the ADA, arguing that Plaintiff failed to submit any evidence establishing that

he is indeed disabled.  [Doc. 50 at 13–14].  However, whether Plaintiff is an individual with a disability goes to the merits of Plaintiff's claims.  *See C.R. Educ. & Enf't Ctr. v. Sage Hosp. Res. LLC*, 222 F. Supp. 3d 934, 956 (D. Colo. 2016) ("To state a claim under Title III, the Plaintiffs must show that . . . Plaintiffs are disabled within the meaning of the ADA[.]").  Again, Defendant's attempt to reargue the merits of Plaintiff's claims here is improper—especially given that Resolute Brewing raises this argument for the *first time* in the instant Motion for Sanctions.   Indeed, Defendant did not challenge Plaintiff's status as a person with a disability "within the meaning of the ADA" in the Motion for Summary Judgment or at any other time reflected in the record before now.  *See* [Doc. 30].

**Third**, Resolute Brewing argues that Mr. Perez made intentional misrepresentations to the Court at the summary judgment hearing by, *inter alia*, stating to the Court "that Plaintiff had cited *Botosan v. Paul McNally Realty*, 216 F.3d 827, 832 (9th Cir. 2000) as authority for *joint and several liability* in its response to the motion for summary judgment."  [Doc. 50 at 12].  The Court respectfully disagrees.

At the hearing, Mr. Perez did not claim that Plaintiff cited *Botosan* in his response to the Motion for Summary Judgment.  Rather, the Court asked whether Mr. Perez had "any case law that cites the [ADA] technical manual for the proposition that with respect to the common areas that are outside the lease or contractual obligation, that . . . a defendant would still be liable for that[.]"  [Doc. 47 at 15:11–15].  Mr. Perez could not immediately provide a case citation at the time; but, later in the hearing, he responded: "Your Honor, you asked for a citation for the authority of joint and several liability in regards to the technical manual.  There is a case, *Botosan . . . v. McNally Realty*, and the cite is 216 F.3d 827, at 832."  [*Id.* at 21:22–22:1].  Thereafter, as Resolute Brewing acknowledges, the Court asked Mr. Perez whether Plaintiff cited that case in his response

to the Motion for Summary Judgment, and Mr. Perez clarified that he had not.  *See* [*id.* at 22:6–20]; *see also* [Doc. 50 at 12–13 (Defendant's acknowledgment of this exchange between the Court and Mr. Perez)].  This exchange does not reflect a position that was "frivolous, unreasonable, or without foundation" to justify the award of fees under the ADA, § 1927, or the Court's inherent authority.  *See Christianburg*, 434 U.S. at 421.

Next, the Court turns to Resolute Brewing's arguments that Plaintiff misrepresented (1) the claims regarding the restrooms; and (2) that Resolute Brewing was "mostly remediated" when he revisited the Property.  *See* [Doc. 50 at 7, 11–15].

### 1.    The Restrooms

As previously noted, in the Motion to Strike, Resolute Brewing argued that the opinions offered by Mr. Mattera were unreliable on their face because the photographs of the restrooms in his report were not the restrooms on Resolute Brewing's property.  *See* [Doc. 26 at 8].  In the instant Motion for Sanctions, Resolute Brewing similarly contends that Plaintiff "prosecuted a claim against Resolute Brewing for violation of the ADA with respect to its bathrooms under false pretenses," and "once the issue was brought to [Plaintiff's and Mr. Perez's] attention with photographic proof in January 2022, they refused to address it, refused to supplement their disclosures, failed to amend the complaint, and failed to timely dismiss the claim against Resolute Brewing."  [Doc. 50 at 11 (citation omitted)].

There is no dispute that the photographs of the restrooms do not reflect the restrooms at Resolute Brewing, and, as a result, the corresponding claims asserted against Resolute Brewing based on the restrooms lacked any factual or legal basis.  *See, e.g.*, [Doc. 54 at 9 (Plaintiff's Response to the instant Motion: "Mr. Perez as counsel for Plaintiff spoke with Mr. McLeod, counsel for Defendant[,] and expressly told Mr. McLeod that Plaintiff would not proceed on claims for the bathroom because the bathroom claims in the Complaint were erroneous")].  Indeed, at the

summary judgment hearing, the Court expressed that it was "quite troubled by the bathroom issue."

[Doc. 47 at 11:14–15].   When the Court asked Mr. Perez to elaborate, he offered the following

explanation:

> I would agree with that, Your Honor.  First off, a candid report is crucial.  And when we first got wind of this, I told Mr. McLeod, and he said he wanted to keep it, you know, on the cheap, and we established a rapport at the beginning because we are both Marines and we both served in the military.  And he brought it up, I looked at it, and it was my error.
>
> When I looked at the report, the way it was formatted with those photos, I did not see that it said that it was for a paper store or something like that.  And I made that mistake.  I did not amend at that point because of my promise, basically, to try to -- I thought we were going to resolve this early, Judge, candidly, you know.

[*Id.* at 11:20–12:8].  Dissatisfied with this indirect response, the Court pressed Mr. Perez further

to justify—pursuant Federal Rule of Civil Procedure 11—his "factual basis" for alleging *in the

Complaint* that "the grab bars do not comply," the "toilet has an improper centerline," the "toilet

flush valve is not mounted on wide side," and that Plaintiff "cannot access the storage areas" in

the restrooms on Resolute Brewing's property.  [*Id.* at 12:9–15]; *see also* [Doc. 1 at ¶ 27.C].  Mr.

Perez responded that he "always elicit[s] a report from an expert to make sure [he does not] run

afoul of" Rule 11 when filing a complaint, but in this case, "[w]hen [he] looked at the report, [he]

plainly misread it" and "made an honest mistake."  [Doc. 47 at 12:16–13:3].  Thus, when Resolute

Brewing's counsel confronted Mr. Perez about the discrepancy with the restroom photos, he

apparently "owned it" and confirmed that "we are not going to proceed" with a claim regarding

barriers in the restrooms.  [*Id.* at 13:3–5]; *see also* [Doc. 33 at 7 ("Plaintiff's counsel verbally

communicated to Defendant's counsel that Plaintiff would not pursue to [sic] issues with

Defendant's restroom.")].

   Chief among the many issues with Mr. Perez's responses is that they purport to address a

solution, i.e., dropping the restroom claims against Resolute Brewing, while wholly ignoring the

problem that he and Mr. Cuesta caused in the first place—namely, asserting claims against Resolute Brewing alleging barriers in its restrooms that *did not exist*.[6]  Mr. Perez's assertions that he "plainly misread" Mr. Mattera's report and "made an honest mistake" are equally unpersuasive and unavailing. *See* [Doc. 47 at 12:16–13:3]; *see also* [Doc. 54 at 19 ("A misreading by Plaintiff's counsel of the report caused it to erroneously attribute the bathroom violations to Resolute Brewing")].  Indeed, according to Mr. Perez, he has "handled dozens, if not hundreds of lawsuits seeking to force business owners to bring their property into ADA compliance and remove barriers to access."  Declaration [of Anthony J. Perez] in Support of Motion for Attorney's Fees and Costs, *Access 4 All Inc. v. Friends Hosp., LLC*, Case No. 22-cv-02358-NYW, ECF No. 20-1 at ¶ 3 (D. Colo. Nov. 21, 2022) ("Perez Declaration").  And, as he explained at the summary judgment hearing, he "always elicit[s] a report from an expert" specifically to ensure he does not "run afoul" Rule 11 when filing a complaint.  [Doc. 47 at 12:16–13:3].  These statements do not explain how photographs that did not reflect Resolute Brewing's restroom came to support legal claims against Defendant; neither Mr. Cuesta nor Mr. Perez offered any other photographs taken of Resolute Brewing's restroom that were inadvertently substituted out for the incorrect photographs.  Indeed, Plaintiff offered no photographs of Resolute Brewing's restroom even after he purportedly returned to the location on July 29, 2022 and found it "mostly remediated."  *See generally* [Doc. 45].

Moreover, it is notable that Mr. Cuesta did not file any document asserting he was voluntarily dismissing the restrooms claims until July 14, 2022, *see* [Doc. 33]—i.e., *after* Resolute Brewing brought the issue to the Court's attention in the Motion to Strike, [Doc. 26], and the

---

[6] Even if barriers did exist with respect to Resolute Brewing's *actual* restrooms, it would not matter because it is undisputed that Plaintiff's claims were not based on Resolute Brewing's restrooms.

Motion for Summary Judgment, [Doc. 30]. In essence, Defendant had no choice but to respond and proceed with the litigation.

In sum, there is no dispute in this case that Plaintiff brought a facially erroneous claim against Resolute Brewing based on alleged barriers in its restrooms that did not exist.

### 2. Mr. Cuesta's Claim that Resolute Brewing's "Business was mostly remediated"

Resolute Brewing also argues that Plaintiff's claim he visited Resolute Brewing and found that it had been "mostly remediated" is "intentionally false . . . insofar as nothing has changed on Resolute Brewing's property since the case commenced." [Doc. 50 at 11–12]. As previously mentioned, Mr. Cuesta's initial deadline to respond to Resolute Brewing's Motion for Summary Judgment was July 29, 2022. *Compare* [Doc. 30 (filed July 8, 2022)] *with* D.C.COLO.LCivR 7.1(d) ("The responding party shall have 21 days after the date of service of a motion, or such lesser or greater time as the court may allow, in which to file a response."). Instead of responding that day, however, he sought dismissal of his claims against Resolute Brewing. [Doc. 36].[7] In the Motion to Dismiss, Mr. Cuesta represented that he

> revisited the Defendant property and found that Defendant RESOLUTE BREWING COMPANY LLC's business was *mostly remediated* and Plaintiff does not wish to continue to pursue the claims as to Defendant RESOLUTE BREWING COMPANY LLC.

[Doc. 36 at ¶ 6 (emphasis added)]. In denying the Motion to Dismiss, the Court found, *inter alia*, that despite Plaintiff's claim that Resolute Brewing's "business was mostly remediated" when he revisited the Property, he failed to "identify *which* alleged violations he found were 'mostly remediated' . . . and what alleged violations remain outstanding." [Doc. 43 at 11]. Mr. Cuesta

---

[7] In addition, the Motion to Dismiss was filed just two days after Resolute Brewing's Motion to Strike became fully briefed on July 27, 2022. *See* [Doc. 26; Doc. 33; Doc. 34].

was ordered to address this issue in his response to the Motion for Summary Judgment.  *See* [*id.* at 11–12].  In resolving the Motion for Summary Judgment, however, the Court did not address any of Plaintiff's responses regarding the "mostly remediated" barriers because the Court granted summary judgment in favor of Resolute Brewing on grounds that Plaintiff lacked standing.  *See* [Doc. 48].  Nevertheless, the Court will address Mr. Cuesta's responses to this issue here, as they reflect the type of obfuscation and/or misrepresentation of the issues in this case that frustrated Defendant's and this Court's efforts to resolve this case.

***Plaintiff's Response to Motion for Summary Judgment.***  In his response to the Motion for Summary Judgment, Mr. Cuesta stated that the "language referencing 'mostly remediated' was in reference to the policies and procedures of Defendant and the fact that the seating itself remains inaccessible, particularly to persons such as Plaintiff who often ambulates in a mobility scooter." [Doc. 45 at 6].  He also represented that "he found that the outdoor seating recreational [sic] had improved," [*id.*], and similarly that "the accessibility issues had improved" in that "there were less obstacles that interfered with the area."  [*Id.* at 8]; *see also* [*id.* at 8–9 (arguing that "Mr. Cuesta was willing to overlook [accessibility issues] because the situation had improved with the outdoor seating had improved [sic]")].  In addition, Mr. Cuesta submitted an affidavit stating that during his visit to the property on July 29, 2022, he

> noticed that the issue with the seating area being inaccessible was *not as bad as on a prior visit*, yet much of it, *specifically the outdoor seating going to the parking area remained inaccessible.* . . .   When later, I was contacted by my attorneys, I informed them that a portion of the outdoor patio area was *more or less accessible from the interior*, even though the seating was not usable in a mobility scooter.  I do not know Defendant's ADA policy regarding their outdoor seating as there seems to have been some changes that make the exterior easier to navigate, in the outdoor recreational area itself, but the type of seating available *remains inaccessible to persons using a mobility scooter* and *they do not appear to have done anything regarding the tables and seating in the parking area.*

[Doc. 45-1 at ¶¶ 6, 8 (emphasis added)].

27

***Plaintiff's Response to Motion for Sanctions.***   Tellingly, Mr. Cuesta's response to the

instant Motion is silent regarding Defendant's claim that that it was an "intentionally false

representation" that Resolute Brewing's business had been "mostly remediated" because "nothing

has changed on Resolute Brewing's property since the case commenced."  [Doc. 50 at 12]; *see*

[Doc. 54 at 9–10].  Instead, Mr. Cuesta explains that:

> [t]he issue of the meaning of "mostly remediated" was addressed in Plaintiff's
> Response to the Motion for Summary Judgment where Plaintiff explained that
> *while the seating itself remains inaccessible, the accessibility issues had improved*
> *when Mr. Cuesta re-visited, as there were less obstacles that interfered with the*
> *exterior area,* however it can easily re-occur and worsen the noncompliance to the
> ADA if Defendant or its employees[] rearrange the seating in a non-compliant
> manner.  However, *the curb*, grassy area and steps on the patio were still present
> and noncompliant with the ADA.  In addition, it is significant for Defendant to have
> policies and procedures in place to ensure that the property does not impose the
> same or other ADA barriers to access.  At this moment, it is unclear what policies
> or procedures, if any, Defendant has in place regarding the seating area to ensure
> current and future compliance or whether Defendant has made any modifications
> to existing policies and procedures.

[Doc. 54 at 9–10 (emphasis added)].

To summarize, when Mr. Cuesta claimed he observed that Resolute Brewing's "business

was mostly remediated" during his July 2022 visit, what he meant was: (1) he was "refer[ring] to

the policies and procedures of Defendant," [Doc. 45 at 6]; (2) "the issue with the seating area being

inaccessible *was not as bad* as on a prior visit," [Doc. 45-1 at ¶ 6 (emphasis added)]; (3) "a portion

of the outdoor patio area was *more or less* accessible from the interior," [*id.* at ¶ 8 (emphasis

added)]; and (4) "there were less [sic] obstacles that interfered with the exterior area," [Doc. 54 at

9–10].[8]

---

[8] Mr. Cuesta's Reply in support of the Motion to Dismiss also provides a vague non-answer
regarding this issue.  *See* [Doc. 42 at 1 (stating he revisited Resolute Brewing on July 29, 2022
"and was satisfied with the state of the establishment during his visit")].

28

Mr. Cuesta's equivocation is obvious.[9]  Not only do none of his responses clarify "*which* alleged violations he found were 'mostly remediated,'" as the Court requested in the Order denying Plaintiff's Motion to Dismiss, [Doc. 43 at 11–12], but Mr. Cuesta also makes other, inconsistent arguments that render the above-referenced responses untenable.

For instance, Mr. Cuesta's assertion that the "language referencing 'mostly remediated' was in reference to the policies and procedures of Defendant," [Doc. 45 at 6], simply makes no sense—that is, Mr. Cuesta's claim that Resolute Brewing's "business was mostly remediated" *could not have* related to Defendant's "policies and procedures."  Disregarding for the moment that Mr. Cuesta does not suggest he even reviewed Resolute Brewing's policies and procedures during his July 2022 visit, *see generally* [*id.*; Doc. 45-1], he expressly admitted in his Response to the Motion for Summary Judgment that he lacks any knowledge of Resolute Brewing's policies and procedures altogether, including whether Defendant made any modifications to same:

> At this moment, it is unclear what policies or procedures, if any, Defendant has in place regarding the seating area to ensure current and future compliance or whether Defendant has made any modifications to existing policies and procedures[.]

[Doc. 45 at 8]; *see also* [*id.* at 3, ¶ 14 ("It does not appear from the pleadings or motions that Defendant has in fact made any changes to its policies, practices or procedures or significant remediation to address the issue of seating/recreation and remain[s] non-compliant."); Doc. 45-1 at ¶ 8 ("I do not know Defendant's ADA policy regarding their outdoor seating")].

---

[9] Indeed, Plaintiff appears to concede his equivocation in his response to the Motion for Summary Judgment.  *See* [Doc. 45 at 6 ("Plaintiff's *equivocation* in his motion to dismiss and language referencing 'mostly remediated' was in reference to the policies and procedures of Defendant and the fact that the seating itself remains inaccessible, particularly to persons such as Plaintiff who often ambulates in a mobility scooter." (emphasis added))].

In addition, the Court is not persuaded by Mr. Cuesta's vague claims regarding the "improvements" he purportedly noticed when he visited Resolute Brewing in July 2022. Those assertions include (1) "he found that the outdoor seating recreational [sic] had improved"; (2) "the accessibility issues had improved" in that "there were less [sic] obstacles that interfered with the area"; (3) "Mr. Cuesta was willing to overlook [accessibility issues] because the situation had improved with the outdoor seating had improved [sic]"; and (4) "the seating/recreation area had improved accessibility, but . . . the type of seating offered in the exterior area continued to be inaccessible." [Doc. 45 at 6, 8–9, 14]. Crucially, none of these statements identifies a single barrier that was remediated in any manner whatsoever, or any specific "obstacles" of which there were fewer as compared to those that existed during Mr. Cuesta's initial visit before he filed suit. Instead, all he does is discuss broadly an "outdoor seating recreational" area, "accessibility issues," and a "situation." *See* [*id.*]. Similarly, Mr. Cuesta's vague assertion that "the issue with the seating area being inaccessible *was not as bad* as on a prior visit" is equally unavailing. [Doc. 45-1 at ¶ 6].

Moreover, any barriers related to the "outdoor seating area" could not have been "mostly remediated" because Mr. Cuesta was and is adamant that the outdoor seating remained "*inaccessible*" when he revisited Resolute Brewing. *See, e.g.*, [Doc. 45 at 6 ("[T]he language referencing 'mostly remediated' was in reference to . . . *the fact that the seating itself remains inaccessible*, particularly to persons such as Plaintiff who often ambulates in a mobility scooter. . . . When Plaintiff Carlos Cuesta[] revisited the property on July 29, 2022, he found that the outdoor seating recreational had improved, but *the seating remained inaccessible*. . . . The issue with the outdoor seating/recreational area is a long-standing issue at this property." (emphasis added)); *id.* at 8 ("While the seating itself remains inaccessible . . ."); Doc. 45-1 at ¶ 8

("I informed [Plaintiff's attorneys] that a portion of the outdoor patio area was *more or less* accessible from the interior, even though the seating was not usable in a mobility scooter." (emphasis added))].

Mr. Cuesta's evasiveness is also noteworthy because, in asserting that Resolute Brewing's "business was mostly remediated," Mr. Cuesta was essentially suggesting that some of his claims against Resolute Brewing had become moot. Although the Court did not address mootness in this case, the Court recently addressed this issue in another case involving Mr. Cuesta, Mr. Perez, and an expert report by Mr. Mattera. *See Access 4 All Inc. v. Silver Oak Assocs., Ltd., LLP*, No. 21-cv-02974-NYW, 2022 WL 4547566 (D. Colo. Sept. 29, 2022). There, the Court explained in relevant part that:

> [G]enerally, the barriers alleged in a properly pleaded complaint define the scope of the case for purposes of determining whether the plaintiff's ADA claims are moot. This conclusion is consistent with the Tenth Circuit's holding in *Kelley* [*v. Smith's Food & Drug Centers, Inc.*, 793 F. App'x 787 (10th Cir. 2019)]. The relevant issue in that case was "*what barriers were alleged in the complaint and were they remediated*." 793 F. App'x at 790. The court, quoting Ninth Circuit precedent, explained that "[i]n general, only disclosures of barriers in a properly pleaded complaint can provide the fair notice required by Rule 8; a disclosure made during discovery, including in an expert report, would rarely be an adequate substitute." *Id.* (changes omitted) (quoting *Oliver v. Ralphs Grocery Co.*, 654 F.3d 903, 909 (9th Cir. 2011)).

*Silver Oak Assocs.*, 2022 WL 4547566, at *12 (emphasis added). Notably, in *Kelley*, the Tenth Circuit rejected the plaintiff's argument that "the district court erred by not allowing him to conduct discovery on the factual issues raised by the motion to dismiss for lack of jurisdiction." *Kelley*, 793 F. App'x at 790–91 (quotation and brackets omitted). The court explained that the plaintiff "ha[d] not pointed to any discovery relevant to the mootness of the claims raised in his complaint. *He conceded that [the defendant] had remediated the architectural barriers alleged in the complaint, so there remained no factual issues.*" *Id.* at 791 (emphasis added).

Applied here, Mr. Cuesta claimed at least some of the barriers he alleged in the Complaint were "mostly remediated" when he revisited Resolute Brewing, but not only did he fail to identify a *single* remediation, but he also could not relate that assertion to a single barrier that was actually alleged in the Complaint *and* attributed to Resolute Brewing.[10]   In other words, despite Mr. Cuesta's declaration that Resolute Brewing's "business was mostly remediated," this claim and his subsequent explanations did nothing to clarify the factual issues that indeed remained and required resolution.  Indeed, Mr. Cuesta's non-responses appear to support Defendant's position that "nothing ha[d] changed on Resolute Brewing's property" from the inception of this action through the filing of the Motion for Sanctions.  [Doc. 50 at 11–12].

### III.   Plaintiff's Remaining Claim Against Resolute Brewing Regarding "Access to Goods and Services" under Count II of the Complaint

Next, the Court addresses Mr. Cuesta's and Mr. Perez's obfuscation generally and particularly with respect to the claims against Resolute Brewing under Count II.  As previously mentioned, the claims under Count II are the only claims Mr. Cuesta asserted against Resolute Brewing, alleging it failed to comply with the ADA regarding "Access to Goods and Services" and the configurations of restrooms, [Doc. 1 at ¶¶ 25–27].  The Court has already addressed the lack of any basis for Plaintiff's assertion of claims against Resolute Brewing with respect to the restrooms.  *See supra* Section II.B.1.  Thus, in this section, the Court seeks to identify the claims (i.e., barriers to access) that Plaintiff was pursuing against Resolute Brewing with respect to "Access to Goods and Services."

In the Complaint, Mr. Cuesta alleged as follows:

---

[10] As discussed further below, even the barriers alleged in the Complaint attributed to Resolute Brewing have been obfuscated throughout this case.

A.  Access to Goods and Services

> Recreational areas at Commercial Property for public use lack required disabled
> use elements, preventing use by Plaintiff, violating the ADAAG.

[Doc. 1 at ¶ 27.A.i].  This was the entire description of the "Access to Goods and Services" to support Mr. Cuesta's only remaining claim against Resolute Brewing under Count II.  Mr. Mattera's report contained a nearly identical assertion as that in the Complaint.  *See* [Doc. 26-2 at 8 (stating under "Access to Goods and Services" that "[r]ecreational areas at Resolute Brewing Center for public use lack required disabled use elements, preventing use by Carlos Cuesta, violating the ADAAG")].  The report also included a notation, stating, "Outdoor Dining Areas not on Accessible Route," along with a photo of a red vehicle parked in the outdoor dining "turf" area, a copy of which is below.  [*Id.*].



There was no other definition of "recreational areas" in the Complaint or in Mr. Mattera's report, nor did those documents define the "required disabled use elements" that were purportedly lacking, or what portions of the "recreational areas" Mr. Cuesta was allegedly prevented from using.  *See* [Doc. 1 at ¶ 27.A.i].  Similarly, Mr. Mattera's report did not explain what he meant when he stated, "Outdoor Dining Areas not on Accessible Route."  [Doc. 26-2 at 8].

As discussed further below, despite his allegations in the Complaint, Mr. Cuesta failed to ever sufficiently define the alleged "recreational areas" or identify the alleged barriers (i.e., "disabled use elements") therein. *See* [Doc. 1 at ¶ 27.A.i]. As a result, the identity of those barriers *and* the "recreational areas" became a moving target throughout this case. Indeed, Mr. Cuesta and Mr. Perez continually obfuscated the claims against Resolute Brewing that required resolution; and their inconsistent representations not only caused unnecessary confusion to the Court and Defendant, but also resulted in Mr. Cuesta and Mr. Perez making numerous contradicting statements that undermined the entire case against Resolute Brewing.

***Plaintiff's Claims under Count I.***   The Court begins by briefly addressing Plaintiff's claims under Count I (against SMT Holdings and Donepudi), as they provide the proper context for discussion of Plaintiff's obfuscation of his claims against Resolute Brewing under Count II. Mr. Cuesta alleged the following specific barriers under Count I in the Complaint:

A. Parking

    i.    Accessible spaces lack clear and level aisles, they have slopes or cross slope of > 8% in Space and Aisle (>2%) endangering Plaintiff when unloading and violating the ADAAG and ADAS Section 502.

    ii.    Commercial Property has 0 van spaces where 1 are required preventing Plaintiff and other disabled patrons safe unloading from vans violating ADAAG Section 4.1.2 (5)(b) and Section 502 of the 2010 ADAS.

    iii.    Parking spaces are not on the nearest, most direct accessible route from parking to access facility entrances, violating the ADAAG and ADAS Section 502. Preventing Plaintiff from safely accessing the Commercial Property without rest or assistance.

        . . .

B. Entrance Access and Path of Travel

    i.    There is no compliant route from transit, sidewalk, and parking areas for Plaintiff to access Resolute Brewing Center which violates the requirements in Sections 4.1.2 and 4.3 of the ADAAG and 2010 ADAS Sections 402, 403, 405 and 406.

    ii.    Accessible routes at Commercial Property have > 3% cross slopes (>2%) creating hazardous conditions for Plaintiff in violation of ADAAG Section 4.3 and Sections 402 and 403 of the 2010 ADAS.

    iii.    Curb ramps at Commercial Property contain excessive slopes of > 10% (>8.33 %) preventing Plaintiff from safe unloading violating ADAAG and ADAS Section 406.

    . . .

    v.    Path of travel connecting areas of Commercial Property are (<36" or 32" for < 2') below required width, violating ADAAG Section 4.3 and Section 403 of the ADAS.

[Doc. 1 at ¶ 24].

Significantly, in response to the Motion for Summary Judgment, Mr. Cuesta emphasized that "[t]he only Count in the Complaint that references the *common areas* [of the Property] is Count I of the Complaint. *That Count is not directed at Defendant Resolute* and is directed at the landlords of the property SMT Holdings LLC and Donepudi Holdings LLC. Therefore, *Defendant Resolute is not responsible for the issues raised in Count I*." [Doc. 45 at 9 (emphasis added)]. Despite these concessions, however, Mr. Cuesta and Mr. Perez proceeded to make numerous arguments that explicitly contradicted their position—namely, that Resolute Brewing *was* responsible for the alleged violations raised under Count I.

***Allegations Regarding the "Parking" Area.*** The only allegations of violations related to "parking" at the Property were raised under Count I, not Count II. *Compare* [Doc. 1 at ¶ 24] *with* [*id.* at ¶ 27]. In fact, in the Motion to Strike, Resolute Brewing argued that "the photos of the *parking lot* and the surrounding areas in Mr. Mattera's report [were] irrelevant" to the claims against it. [Doc. 26 at 9 (emphasis added)]; *see also* [Doc. 26-2 at 8]. Yet, in his response to the Motion to Strike, Mr. Cuesta insisted that the alleged violations in the "parking and common area" indeed applied to Resolute Brewing, despite never alleging such in the Complaint, as follows:

B. *Parking Lot*

Defendant is responsible for the exterior areas that it exercises control over. Defendant has *placed tables in the exterior area* and presumably exercises control over the area, and therefore has the ability to remedy any non-compliance with the ADA. *The tables and seating are in the parking lot and pathways*. Moreover, Defendant took over the portion of the *parking and common area*, and it is unclear what the scope of Defendant's responsibilities are over the exterior common areas, as it controls at least some of the exterior premises at issue. For the Defendant to state that it has not authority or control over any of the parking lot is disingenuous.

[Doc. 33 at 7 (emphasis added)].

What is more, although Mr. Cuesta confirmed, in response to the Motion for Summary Judgment, that (1) "Resolute [Brewing] is not [i]ncluded in Count I" which "references the common areas" on the Property, (2) Count I "is not directed at" Resolute Brewing, and (3) Resolute Brewing "is not responsible for the issues raised in Count I," [Doc. 45 at 9], he also argued the exact opposite in the *same document*. Specifically, in the pages immediately preceding the foregoing assertions, Mr. Cuesta argued that Resolute Brewing "operates an exterior patio/recreational area" that "extends into the parking lot." [*Id.* at 6–7]. He claimed that this "outdoor recreation area" is "a seemingly common area to the shopping center which Defendant Resolute controls, maintains, and patently profits from," and insisted that Resolute Brewing's alleged "noncompliance to the ADA is pled in the Complaint." [*Id.* at 7–8]; *see also* [*id.* at 8 (claiming that Defendant was "playing a game of 'gotcha' and trying to take advantage of an honest error to deflect attention away from the legitimate accessibility issues with its property"); *id.* (arguing that Resolute Brewing "alleges that it is not responsible for the exterior areas, but it clearly controls at least portions of them")].

And then, at the subsequent summary judgment hearing, Plaintiff's counsel, Mr. Perez, reversed course yet again, claiming he was "surprised to see in the Summary Judgment Motion

that [Defendant was] focus[ing] on the parking area" because Plaintiff "never alleged" Resolute Brewing was "responsible for the parking area." [Doc. 47 at 13:21–24].

      ***Allegations Regarding a "Curb Ramp" or "Path of Travel."*** Moreover, under Count I in the Complaint, Plaintiff alleged specific violations on the Property related to "Entrance Access and Path of Travel," including, *inter alia*, that "[t]here is no compliant route from transit, sidewalk, and parking areas for Plaintiff to access Resolute Brewing," and general "*[p]ath of travel* connecting areas of Commercial Property*" was not compliant with the ADA. [Doc. 1 at ¶ 24.B (emphasis added)]. Again, based on the allegations in the Complaint *and* Mr. Cuesta's own admission, none of these alleged violations applied to Resolute Brewing. *See* [Doc. 45 at 9 ("Defendant Resolute is not responsible for the issues raised in Count I.")].

      And yet—for the *first time* at the summary judgment hearing—Mr. Perez argued that Resolute Brewing's property was not compliant with the ADA because "there is no ramp to go" from Resolute Brewing's outdoor patio to the separate outdoor seating "turf" area. [Doc. 47 at 14:17–20]; *see also* [*id.* at 17:3 ("There are no ramps from the patio down into the turf area.")]. He also stated there was "no mention of any path within the turf area," arguing that individuals similar to Plaintiff could not "even get inside" and "they are kept at the curb, basically." [*Id.* at 17:5–7]. Mr. Perez insisted that Resolute Brewing had "yet to address or remediate the access from their patio to the turf area or even access to the turf area or within the turf area." [*Id.* at 18:11–13]; *see also* [*id.* at 34:3–6 ("There are still issues in this case that haven't been resolved; namely dealing with the recreation or exterior patio area, which on its face appears to be easily half of this facility.")]; *compare* [Doc. 30-6 (Resolute Brewing's patio photo)] *with* [Doc. 26-2 at 8 (Mr. Mattera's photo of the "turf" area in the report)].

In his Response to the instant Motion for Sanctions, Mr. Cuesta contends that his and Resolute Brewing's counsel discussed that "the compliance issue extended to the exterior area" of the property, "as memorialized in an email from [Resolute Brewing's counsel] on March 3, 2022, which . . . references the same picture from Mr. Mattera's report that had a red vehicle in the frame" (i.e., the photo of the "turf area"). [Doc. 54 at 5]; *see also* [Doc. 26-2 at 8]. Mr. Cuesta also challenges Resolute Brewing's argument that it first learned "about the 'curb ramp' issue" at the summary judgment hearing, arguing that the March 3, 2022 email from Defendant's counsel reflects that Defendant was aware of this issue. [Doc. 54 at 5–6]. Mr. Cuesta contends that Resolute Brewing's arguments regarding insufficient notice of Plaintiff's claims against it are merely "argument[s] on semantics, what to call and how to identify the outdoor area, which Defendant Resolute refers to as the 'exterior patio' and is referenced in Plaintiff's Complaint as the 'outdoor recreational area.'" [*Id.* at 9]; *see also* [*id.* at 5 ("Defendant and its counsel knew the issue was with the exterior area."); *id.* at 9 ("Defendant Resolute knew and was on notice for months that the remaining issue was with the outdoor recreational area/exterior seating area and counsel.")]. Mr. Cuesta urges that Resolute Brewing "self-servingly did not mention the exterior recreational/outdoor area in any motion and continues to omit the relevant evidence of its noncompliance under the ADA." [*Id.* at 6]. Mr. Cuesta further states that "the curb, grassy area and steps on the patio were still present and noncompliant with the ADA." [*Id.* at 10].

Mr. Cuesta's arguments lack basis for several reasons. First, the Complaint mentions "curb ramps" only one time, under Count I. *See* [Doc. 1 at ¶ 24.B.iii ("Curb ramps at Commercial Property contain excessive slopes . . . preventing Plaintiff from safe unloading violating ADAAG and ADAS Section 406.")]. And, according to Mr. Cuesta, none of the allegations under Count I were directed at Resolute Brewing. *See* [Doc. 45 at 9].

Second, despite Plaintiff's argument that a March 3, 2022 email from Resolute Brewing's counsel demonstrates that Defendant previously had notice of "the 'curb ramp' issue," [Doc. 54 at 6 (citing [Doc. 54-4])], there is no mention of any "curb ramps" or "ramps" generally in that email. Rather, that email states, in relevant part: "I will also get a current photo of the outside seating area that is accessible that we discussed (i.e., the porch which can be seen above the red Lexus in your expert's report)." [Doc. 54-4]; *see also* [Doc. 26-2 at 8]. And, even assuming that the reference to "the porch which can be seen above the red Lexus in [Mr. Mattera's] report" in the March 2022 email relates to Mr. Perez's assertion that there was a lack of "ramps from the patio down into the turf area" at the summary judgment hearing, *compare* [Doc. 54-4] *with* [Doc. 47 at 17:3], Mr. Cuesta never amended the Complaint to allege these violations *against Resolute Brewing*.[11]

Mr. Cuesta's failure to amend is notable here because "[t]he very mission of the summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Fed. R. Civ. P. 56(e) advisory committee's note to 1963 amendment. Mr. Cuesta's and his counsel's arguments at the summary judgment stage were inconsistent with that purpose, given that the operative Complaint failed to identify any of the specific violations on the Property that they repeatedly argued were Resolute Brewing's responsibility. Indeed, as previously mentioned, Mr. Cuesta and his counsel insisted that the issues alleged under Count I, such as the "parking" area and "curb ramp," [Doc. 1 at ¶ 24], were "not directed at Defendant

---

[11] Mr. Cuesta also references Defendant's counsel's billing sheets, arguing they "reflect that the outdoor recreational area issue was known by Defendant's counsel" before the Motion for Summary Judgment was filed. [Doc. 54 at 6]. He claims that "Defendant's counsel researched ADA 'outdoor access for restaurants utilizing outdoor overflow areas during the pandemic." [*Id.*]. However, Plaintiff's attempt to use a *post*-Complaint filing billing entry to justify his failure to allege in the Complaint any claims against Resolute Brewing regarding "curb ramps" is improper. *See* [*id.*]. And, in any event, the billing entries referenced by Plaintiff state nothing about "curbs" or "ramps." *Compare* [*id.*] *with* [Doc. 50-9 at 4, 9].

Resolute and [were] directed at . . . SMT Holdings LLC and Donepudi Holdings LLC." [Doc. 45 at 9]; *see also Kelley*, 793 F. App'x at 790 ("In general, only disclosures of barriers in a properly pleaded complaint can provide the fair notice required by Rule 8; a disclosure made during discovery, including in an expert report, would rarely be an adequate substitute. For purposes of Rule 8, a plaintiff must identify the barriers that constitute the grounds for a claim of discrimination under the ADA in the complaint itself." (citations, internal quotation marks, and brackets omitted)).

Moreover, Plaintiff's obfuscation as to the violations alleged against Resolute Brewing is made even more apparent by his contention that it is "essentially an argument on semantics" regarding "what to call and how to identify the outdoor area, which Defendant Resolute refers to as the '*exterior patio*' and is referenced in Plaintiff's Complaint as the '*outdoor recreational area*.'" [Doc. 54 at 9 (emphasis added)]. Plaintiff is mistaken. Indeed, it is undisputed that the "exterior patio" referenced by Resolute Brewing in the Motion to Dismiss is *separate from* the outdoor "[r]ecreational areas" (i.e., the "turf" area) referenced in the Complaint and Mr. Mattera's report, which the Parties and the Court have acknowledged in this case.[12] Thus, the Court respectfully disagrees that a proper identification of Plaintiff's claims against Resolute Brewing—especially at the summary judgment stage—is merely a matter of "semantics."

---

[12] *Compare, e.g.*, [Doc. 30 at ¶ 8 (Defendant: "A true and correct photo of the outdoor patio associated with [Resolute Brewing] is attached as Exhibit F.")] *and* [Doc. 30-6 (the photo of the patio)] *with* [Doc. 26-2 at 8 (Mr. Mattera's photo of the "Recreational area at Resolute Brewing Center [sic] for public use")]; *compare* [Doc. 47 at 8:12–15 (The Court: "But Exhibit F is the picture that I referred to earlier, which is the outside patio area that looks like it extends from the restaurants, it is not the turf area" photographed in Mr. Mattera's report)] *and* [*id.* at 8:21–9:3 (Defendant's counsel: confirming that the outdoor patio "is not" the same as "the turf area," which is "adjacent to the patio. It is down steps.")] *with* [*id.* at 18:11–13 (Plaintiff's counsel arguing that Resolute Brewing had "yet to address or remediate the access from their patio to the turf area or even access to the turf area or within the turf area")].

In sum, Mr. Cuesta lacked any basis for asserting a claim against Resolute Brewing with respect to its restrooms.  Thus, he purportedly had *one* legitimate claim against Resolute Brewing related to "Access to Goods and Services," specifically the "[r]ecreational areas" on the Property.  [Doc. 1 at ¶ 27.A.i].  But the facts underlying that claim lacked any definition or consistency, and Plaintiff and Mr. Perez intentionally obfuscated the specific factual issues that existed as to the "recreational areas" alleged in the Complaint, or what factual issues remained after Plaintiff claimed that Resolute Brewing's "business was mostly remediated."  [Doc. 26 at ¶ 36]; *see Lewis*, 500 F.3d at 1153 (explaining that sanctions are appropriate where counsel obfuscates "the legal issues" and complicates the opposing party's and the court's ability to "sort them out"; or "submits rambling briefs" and "cites to inapplicable or irrelevant authorities" or "misrepresents facts or law to the court").  The record demonstrates that these actions were not mere inadvertent oversights, or attributable simply to a lack of precision.  Time and time again, when pressed by Defendant or the Court, Plaintiff appears to have intentionally sidestepped the issue at hand in an attempt to preserve the viability of his claims against Resolute Brewing—the only appearing Defendant— until he could no longer, and then attempted to dismiss the action without prejudice to avoid the consequences of his conduct.

## IV.   Mr. Perez's Conduct in Context

Significantly, the Court  finds that Mr. Cuesta's and Mr. Perez's conduct in this case is not unique to this action.

***Access 4 All Inc. v. Silver Oak Associates.***  For instance, in *Silver Oak Associates*, Mr. Cuesta attempted to expand the number of violations that he alleged in the complaint by mischaracterizing two supplemental expert reports—which he disclosed after his deadline for designating affirmative experts—as timely *rebuttal* reports.  *See Silver Oak Assocs.*, 2022 WL

4547566, at *2–6.[13]  Specifically, in the complaint in that case, Mr. Cuesta identified 15 alleged

ADA violations against the defendant, arising from the parking, entrance access and path of travel,

access to goods and services, and public restrooms.  *Id.* at *9.  He also submitted an Initial Expert

Report by Mr. Mattera that likewise identified the same number of violations.  *Id.*  However, unlike

the Initial Report—which contained nine pages and identified 15 alleged ADA violations—the

first supplemental expert report was 44 pages long and identified 84 alleged violations, and the

second supplemental report was 36 pages long and identified 75 alleged violations.  *Id.* at *2.  The

supplemental reports were also authored by Mr. Mattera.  *Id.*

      This Court rejected Mr. Cuesta's arguments attempting to characterize the supplemental

reports as rebuttal reports.  Specifically, in addition to finding that the supplemental reports bore

"none of the hallmarks of proper rebuttal testimony," *id.* at *5, the Court noted that the

supplemental expert reports expanded the number of violations that Mr. Cuesta initially identified

in the Complaint.  *Id.* at *7 ("For instance, in addition to specifying issues with the width and

gradient of the parking spaces, the May 5, 2022 Supplemental Report lists an

insufficient *number* of accessible parking spaces as one of the non-compliant items on the

Property.  However, an insufficient number of accessible parking spaces is not mentioned

anywhere in the Initial Report or the Complaint."  (citations omitted)).  The Court also found that

Mr. Cuesta acted willfully in failing to disclose the supplemental reports on time, and then

intentionally misrepresenting the circumstances under which they were disclosed:

> Plaintiffs ask this Court to deny the Motion to Strike on the bases that (1) the
> Supplemental Reports constitute rebuttal opinions, and (2) therefore, the disclosure
> was timely so long as it was produced before Plaintiffs' deadline to disclose their

---

[13] The plaintiffs in that case were Mr. Cuesta and an organization called Access 4 All, Incorporated.
*See Silver Oak Assocs.*, 2022 WL 4547566, at *1.  Mr. Cuesta acknowledges that he "is an officer
of Access 4 All, Incorporated."  [Doc. 54 at 2]; *see also* [Doc. 54].

rebuttal experts.  However, there is no legitimate dispute that Plaintiffs' affirmative expert disclosures were due March 24, 2022.  And, significantly, in arguing that the Supplemental Reports constitute rebuttal opinions, Plaintiffs fail to address the case law regarding what constitutes a rebuttal opinion versus an affirmative opinion; ignore the fact that the opinions in the Supplemental Reports do not address any opinions offered by Defendants' expert witness; and *avoid the fact that the Supplemental Reports are based expressly upon discovery that Plaintiffs' expert conducted before Plaintiffs ever received Defendants' expert's report to rebut in the first place*.

*Id.* at *8 (emphasis added) (citation omitted).

***Magistrate Judge Irick's Report and Recommendation.***  In addition, Mr. Perez and his law firm were censured in a Report and Recommendation ("Recommendation"), dated November 13, 2018, by United States Magistrate Judge Daniel C. Irick of the United States District Court for the Middle District of Florida ("Middle District of Florida"), Orlando Division.  *See In re ADA Cases*, No. 6:18-MC-14-ORL-31DCI, 2018 WL 6620603 (M.D. Fla. Nov. 13, 2018), *report and recommendation adopted*, 2019 WL 12261700 (M.D. Fla. Jan. 29, 2019).  Judge Irick was tasked with issuing an appropriate show cause order and recommendation concerning the conduct of various attorneys in ADA cases, including Mr. Perez and his partner, Alfredo Miguel Garcia-Menocal,[14]  of their namesake firm, Garcia-Menocal & Perez, P.L.  *Id.* at *1–2.  Judge Irick explained that he entered an order to show cause in May 2018, wherein he "identified numerous negative orders stemming from the attorneys' repeated failure to comply with the Federal Rules of Civil Procedure, the Local Rules, and the Court's orders, as well as orders directed to consistently deficient pleadings and motions."  *Id.* at *2.  After conducting separate show cause hearings with the violating attorneys, Judge Irick issued the Recommendation, wherein he identified three overarching issues that merited discussion: "1) the repeated failure to comply with the Federal

---

[14] Mr. Garcia-Menocal is not counsel of record for Plaintiff in this case.

Rules of Civil Procedure, the Local Rules, and the Court's orders; 2) the filing of consistently deficient pleadings and substantive motions; and 3) the use of ADA experts." *Id.* at *4. With respect to Messrs. Perez and Garcia-Menocal, Judge Irick recommended that they be "admonished and subject to temporary court oversight for four principal reasons":

> First, Messrs. Garcia-Menocal and Perez repeatedly failed to comply with the Federal Rules of Civil Procedure, the Local Rules, and the Court's orders. Indeed, Messrs. Garcia- Menocal and Perez conceded this fact.
>
> Second, Messrs. Garcia-Menocal and Perez are principals at Garcia-Menocal & Perez, P.L and, thus, have total control over filing and litigating cases (including ADA cases) in this Division. Yet, despite the number of negative orders filed against them for noncompliance, they seemingly took little, if any, action to ensure compliance because they continued to fail to comply with the Federal Rules of Civil Procedure, the Local Rules, and the Court's orders.
>
> Third, it appears that Messrs. Garcia-Menocal and Perez intend to continue litigating cases in this Division, and, thus, the possibility for further compliance issues remains.
>
> Fourth, despite the measures Messrs. Garcia-Menocal and Perez have reportedly taken to ensure compliance, they have had multiple negative orders entered against them since the Order to Show Cause was entered. *Brito v. O P realty Partners, LLC*, Case No. 6:17-cv-2160-Orl-22TBS, Doc. 25 (M.D. Fla. Oct. 18, 2018) (order dismissing case for lack of prosecution); *Longhini v. The Cypress Pointe Resort at Lake Buena Vista Condominium Assoc., Inc.*, Case No. 6:18-cv-1010-Orl-22TBS, Doc. 17 (M.D. Fla. Oct. 11, 2018) (order denying motion for failure to comply with Local Rule 3.01(g)); *Longhini v. Big Lots Stores, Inc.*, Case No. 6:17-cv-2129-Orl-22TBS, Doc. 21 (M.D. Fla. July 24, 2018) (order to show cause against plaintiff for failing to file a notice informing the Court about the outcome of mediation); *Brito v. 4018 W. Vine Street LLLP*, Case No. 6:18-cv-177-Orl-41TBS, Doc. 21 (M.D. Fla. May 30, 2018) (order striking notice of voluntary dismissal for failure to comply with Federal Rule of Civil Procedure 41(a)(1)(A)); *Longhini v. Lakeside Operating Partnership, L.P.*, Case No. 6:17-cv-1651-Orl-31GJK, Doc. 15 (M.D. Fla. May 23, 2018) (order to show cause why the case should not be dismissed for not timely moving for default judgment). Considering the number of negative orders entered against Messrs. Garcia-Menocal and Perez since the Order to Show Cause was entered, the undersigned is skeptical that the measures they have reportedly put in place to ensure compliance will, in fact, achieve that goal.

*Id.* at *6 (record citations omitted).

Despite the number of negative orders against Mr. Perez's firm that Judge Irick identified in his Recommendation, Mr. Perez proceeded—several years later—to engage in conduct in this District that repeatedly failed to comply with the Federal Rules of Civil Procedure and this Court's Orders.[15]   In this context, the Court does not find Mr. Perez's misconduct in this case to be an isolated situation, nor can the Court simply chalk Mr. Perez's and/or Mr. Cuesta's inconsistent representations to mere inadvertence.  Again, according to Mr. Perez, he has "handled dozens, if not hundreds of lawsuits seeking to force business owners to bring their property into ADA compliance and remove barriers to access."  Perez Declaration, *Friends Hosp., LLC*, Case No. 22-cv-02358-NYW, ECF No. 20-1; *see also Brito*, 2022 WL 3585646, at *2 (noting that Mr. Perez is "familiar with ADA litigation").  Thus, the Court finds that Mr. Perez's conduct in this case was intentional at worst, and deliberately reckless at best.

## V.   The Basis for Sanctions in this Case: Rule 11 vs. § 1927 vs. the Court's Inherent Authority

As mentioned above, Resolute Brewing seeks sanctions against Plaintiff pursuant to Rule 11, § 1927, and the Court's inherent authority.  At the outset, the Court finds that sanctions under Rule 11 are inappropriate here.  "The Tenth Circuit has held that a party may not file a motion for sanctions under Rule 11 after a case has been dismissed."  *Kazazian v. Emergency Serv.*

---

[15] Resolute Brewing references Judge Irick's Recommendation to support that Judge Irick "expressed serious concerns" that there "appears to be *indicia* that [Plaintiff was] sharing in settlement proceeds with his legal counsel in order to fund the enterprise . . . with respect to these types of cases."  [Doc. 50 at 15].  Mr. Cuesta disagrees that Judge Irick's Recommendation is related to this case, arguing that "the section regarding experts the Defendant cites to (pages 19-20) did not pertain to Mr. Perez or Plaintiff's firm or Mr. Mattera[;] instead the Court noted concerns about the attorneys at a[nother] particular law firm . . . which Mr. Perez is not associated with."  [*Id.* at 5].  Notwithstanding the Parties' arguments, however, the Court finds Judge Irick's Recommendation relevant insofar as he notes, *inter alia*, Mr. Perez's and his firm's failures to comply with the Federal Rules of Civil Procedure, as well as "the possibility for further compliance issues"—conduct which Mr. Perez has continued to exhibit in *this* case, as explained herein.

*Physicians, P.C.*, 300 F.R.D. 672, 677 (D. Colo. 2014) (citing *AeroTech, Inc. v. Estes*, 110 F.3d 1523, 1528 (10th Cir. 1997) ("Because Vernon Estes did not move for Rule 11 sanctions until after AeroTech had moved to dismiss its claims against him, we agree with the magistrate [judge]'s conclusion that Rule 11's cure provision prevents Vernon Estes from seeking sanctions."))); *see Roth v. Green*, 466 F.3d 1179, 1193 (10th Cir. 2006) ("[S]ervice of a sanctions motion after the district court has dismissed the claim or entered judgment prevents giving effect to the safe harbor provision or the policies and procedural protections it provides, and it will be rejected." (alteration marks in original)).  The Court has already granted Resolute Brewing's Motion for Summary Judgment.  As a result, there are no pleadings or contentions that Plaintiff can withdraw, and Rule 11 is inappropriate for purposes of sanctions in this case.  *See Kinney v. Cnty. of Hennepin*, No. CIV 02-963 JRTFLN, 2002 WL 31163092, at *3 (D. Minn. Sep. 25, 2002) (reasoning that granting Rule 11 sanctions after voluntary dismissal of case would defeat the purpose of safe harbor provision because "there is no pleading or contention left to be withdrawn" (quotation omitted)).

Nevertheless, the Court finds that § 1927 provides the appropriate mechanism for adequate sanctions in this case, in the form of an award of a portion of Resolute Brewing's fees, costs, and expenses.  *See Chambers*, 501 U.S. at 50 ("[W]hen there is bad-faith conduct in the course of litigation that could be adequately sanctioned under the Rules, the court ordinarily should rely on the Rules rather than the inherent power.  But if in the informed discretion of the court, neither the statute nor the Rules are up to the task, the court may safely rely on its inherent power."); *see also Taylor v. Nat'l Collegiate Student Loan Tr., 2007-1*, No. 21-4049, 2023 WL 2147332, at *6 (10th Cir. Feb. 22, 2023) ("Ordinarily, a court should rely on statutory sanctions." (citing *Chambers*, 501 U.S. at 50)).  Because § 1927 permits sanctions against an attorney, Plaintiff's counsel and/or

his firm will be responsible for such fees, costs, and expenses. *See Miera*, 143 F.3d at 1342 (noting that "an attorney subjects himself to sanctions under § 1927").

As detailed in this Order, Mr. Perez, through his representation of Plaintiff, exhibited conduct in this case that falls under several of the non-exclusive categories in which the Tenth Circuit has found such § 1927 sanctions appropriate—namely, (1) when an attorney is "cavalier or bent on misleading the court"; (2) when an attorney "intentionally acts without a plausible basis"; and (3) when an attorney engages in "conduct that, viewed objectively, manifests either intentional or reckless disregard of the attorney's duties to the court." *Id.* (quotations and citations omitted).

The Court emphasizes, however, that Mr. Cuesta should not construe the imposition of sanctions against Mr. Perez as absolution from any fault he (Mr. Cuesta) may personally, and rightly, possess for the various misrepresentations and/or obfuscations in this case. *See, e.g.*, [Doc. 45-1 at ¶ 6 (Mr. Cuesta's affidavit: "When I visited the property on July 29, 2022, I noticed that the issue with the seating area being inaccessible *was not as bad as on a prior visit*, yet much of it, specifically the outdoor seating going into the parking area remained inaccessible." (emphasis added))]. In fact, in this District alone, a search for Mr. Cuesta's name in the Court's Case Management/Electronic Case Filing system reveals 43 cases in which Mr. Cuesta is a plaintiff— all of which were filed between November 5, 2021 and February 6, 2023. *Cf.* [Doc. 50-2 (screenshot of Mr. Cuesta's Facebook page, where he refers to himself as an "ADA advocate")]. Nevertheless, Mr. Cuesta is not the only plaintiff who Mr. Perez represents in ADA matters. *See, e.g.*, *In re ADA Cases*, 2018 WL 6620603, at *6 (collecting cases). Indeed, Mr. Perez is listed as the attorney of record in nearly 150 cases filed in this District since August 2017. Thus, the Court

finds it appropriate for Mr. Perez and/or his firm to personally bear responsibility for the portion of Resolute Brewing's fees, costs, and expenses that the Court awards in this case.

## VI.     Award of Fees, Costs, and Expenses

Resolute Brewing seeks fees and expenses in the total amount of $85,030.08.  *See* [Doc. 50 at 18]; *see also* [Doc. 50-8; Doc. 50-9].   These fees and expenses cover the period from December 6, 2021, approximately two and a half weeks after Plaintiff filed the Complaint, to November 10, 2022, the date Resolute Brewing filed the instant Motion for Sanctions.  *See* [Doc. 50-9].  Resolute Brewing claims that this amount was "unfortunately reasonable and necessary to bring into the light of day the misconduct which was unreasonably, vexatiously, and unnecessarily inflicted upon Resolute by" Plaintiff, Mr. Perez, and Mr. Mattera.  [Doc. 50 at 18].  Defendant also asserts that its attorney's hourly rates and "the number of hours expended are reasonable in light of the serious misconduct which Respondents have engaged in."  [*Id.*].  Further, Resolute Brewing insists that "the value of the work is evident in that the Court granted Resolute's motion to strike Plaintiff's purported expert and granted summary judgment in Resolute's favor after a hearing on the merits."  [*Id.*].   Finally, Defendant contends that "the fees and costs requested are also reasonable in comparison to the fees and costs which Respondents themselves have requested in other actions in the District of Colorado involving cases wherein the defendants stipulated to judgment from the beginning in order to avoid the time and expense of sham litigation."  [*Id.*].

In response, Plaintiff counters that the amount of fees requested by Resolute Brewing's counsel "shocks the conscience for a case that involved an answer, a motion to strike, a motion for summary judgment, the instant motion, a fifteen (15) minute scheduling conference, and a forty-nine (49) minute substantive hearing on the Defendant's Motion for Summary Judgment."  [Doc. 54 at 20].  Plaintiff argues that Resolute Brewing's bill contains "an alarming number of entries," many of which "are questionable at best and lack requisite detail."  [*Id.* at 21].  Plaintiff also

contends that "Defendant's counsel did not attach their retainer agreement" and "[i]t is unclear what they are allowed to bill their client for, whether these charges would be permissible under their retainer agreement and what was billed to their client." [*Id.*].  In addition, Plaintiff challenges certain entries in the Resolute Brewing's bill "for out-of-town travel including airfare and hotels" as unreasonable.  [*Id.* at 21–22].  Plaintiff further argues that "Defendant's counsel billed 66.3 hours for paralegal work that is administrative/clerical in nature." [*Id.* at 22].  Given the amount of Defendant's counsel's bill, Plaintiff (and Mr. Perez) request that, in the event the Court awards Resolute Brewing its fees, "Plaintiff and his counsel be given the opportunity to brief the issues more fully with Defendant's billing sheets and time entries given the high volume of billing and entries, which would take several pages to fully brief and address." [*Id.*].

### A.    Legal Standard

A party seeking an award of attorney's fees must establish the reasonableness of each dollar and each hour for which the party seeks an award.  *See Jane L. v. Bangerter*, 61 F.3d 1505, 1510 (10th Cir. 1995).  Courts may determine the reasonableness of a request for attorney's fees by calculating the "lodestar amount," which represents the number of hours reasonably expended multiplied by a reasonable hourly rate.  *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).  This standard also applies to a request for fees for services provided by non-lawyers, including law clerks and paralegals.  *See Case v. Unified Sch. Dist. No. 233*, 157 F.3d 1243, 1250 (10th Cir. 1998) ("As to services provided by non-lawyers, if 'law clerk and paralegal services are not reflected in the attorney's fee, the court may award them separately as part of the fee for legal services.  The court should scrutinize the reported hours and the suggested rates in the same manner it scrutinizes lawyer time and rates." (alteration marks omitted) (quoting *Ramos v. Lamm*, 713 F.2d 546, 558–59 (10th Cir. 1983))).

After confirming the adequacy of the time records, a court must then ensure that the attorney for the party seeking fees has exercised proper "billing judgment." *Case*, 157 F.3d at 1250. "Billing judgment consists of winnowing the hours actually expended down to the hours reasonably expended." *Id.* The Tenth Circuit has established six factors district courts must consider in determining the reasonableness of the number of hours expended in litigation:

> (1) whether the tasks being billed would normally be billed to a paying client, (2) the number of hours spent on each task, (3) the complexity of the case, (4) the number of reasonable strategies pursued, (5) the responses necessitated by the maneuvering of the other side, and (6) potential duplication of services by multiple lawyers.

*Robinson v. City of Edmond*, 160 F.3d 1275, 1281 (10th Cir. 1998) (quotation omitted). Further, "other expenses may be included in an attorneys fee award if such expenses are typically billed in addition to the attorney's hourly rates." *Casey v. Williams Prod. RMT Co.*, 599 F. Supp. 2d 1253, 1255 (D. Colo. 2009), *as amended* (Jan. 22, 2009).

## B.     Analysis

As an initial matter, the Court respectfully declines Plaintiff's request that he and Mr. Perez be permitted to submit further briefing on Defendant's bills. *See* [Doc. 54 at 22]. Indeed, Plaintiff merely asserts, without any support, that Defendant's bill contains several entries that "are questionable at best and lack requisite detail." [*Id.* at 21]. However, the Court finds that the billing entries provide sufficient detail to permit the Court to identify the specific tasks Resolute Brewing's counsel performed. *See, e.g.*, [Doc. 50-9 at 21 (2.5 hours to "[r]eview Plaintiff's opposition to our Mtn to Strike their expert, plus the operative Scheduling Order, plus this Court's view of 1927 and the elements essential to be met therein, and outline the reply thereto as well as our intended Mtn for Fees and Costs")]. Moreover, Plaintiff cites no authority—and the Court could not independently find any—to support his proposition that Defendant's counsel was

*required* to "attach their retainer agreement" to support the request for fees.  [Doc. 54 at 21].  Next, the Court determines whether the amount requested by Defendant is reasonable.

   ***Reasonable Rate.***   A "reasonable rate" is defined as the prevailing market rate in the relevant community for an attorney of similar experience.  *Guides, Ltd. v. Yarmouth Grp. Prop. Mgmt., Inc.*, 295 F.3d 1065, 1078 (10th Cir. 2002).  The party requesting fees bears the burden of establishing that the billed rates are in line with the prevailing market rate.  *Ellis v. Univ. of Kan. Med. Ctr.*, 163 F.3d 1186, 1203 (10th Cir. 1998).  A court may "adjust the lodestar upward or downward to account for the particularities" of the work performed.  *Phelps v. Hamilton*, 120 F.3d 1126, 1131 (10th Cir. 1997).  In addition, a court may reduce "the reasonable number of hours if the attorney's time records are sloppy and imprecise and fail to document adequately how he or she utilized large blocks of time."  *Case*, 157 F.3d at 1250 (quotation omitted).

   Here, Resolute Brewing seeks fees for work performed by its counsel, Joseph A. O'Keefe, and his legal team at his law firm, McLeod Brunger PLLC (the "Firm").  [Doc. 50 at 18].  Defendant submitted a declaration from Mr. O'Keefe, wherein he sets forth an account of the hours that his Firm expended in this litigation.  [Doc. 50-8].  Specifically, Mr. O'Keefe states that his hourly rate for this matter ranges from $399.00 to $425.00, his paralegal's hourly rate ranges from $165.00 to $175.00, and his legal assistant's hourly rate ranges from $75.00 to $95.00.  [*Id.* at ¶ 4].  The Court finds that Mr. O'Keefe's billing rates are reasonable, in light of Mr. O'Keefe's 27 years of experience practicing law.  *See, e.g.*, *Prim v. Ensign U.S. Drilling, Inc.*, No. 15-cv-02156-PAB-KMT, 2019 WL 4751788, at *7 (D. Colo. Sept. 30, 2019) (approving hourly rates of $400 per hour for attorney with eight years' experience and $650 per hour for attorneys with 18 and 22 years of experience); *Aguilar v. Pepper Asian Inc.*, No. 21-cv-02740-RM-NYW, 2022 WL 408237, at *7 (D. Colo. Feb. 10, 2022) (this Court concluding that a $400.00 per hour rate was reasonable for an

attorney with 16 years of experience); *compare Mendoza v. Valley Park Apartments, Inc.*, No. 13-cv-00002-PAB-KMT, 2014 WL 984687, at *6 (D. Colo. Mar. 13, 2014) ($250 was a reasonable rate for attorney with seven years of experience).

However, the Court is unable to reach the same conclusion with respect to the fees requests for hours billed by Mr. O'Keefe's paralegal or legal assistant. Under the Local Rules of Practice for this District, a motion for attorney's fees must "include the following for *each person* for whom fees are claimed: (1) a summary of relevant qualifications and experience." D.C.COLO.LCivR 54.3(b). Neither the Motion nor Mr. O'Keefe's Declaration comply with this rule. Specifically, while Mr. O'Keefe's Declaration includes a statement of his own experience and qualifications, *see also* [Doc. 50-10 (Mr. O'Keefe's curriculum vitae)], he does not include the same for his paralegal or legal assistant. *See* [Doc. 50-8]. Nor does he specify the identities of his paralegal and legal assistant, which is notable given that the attached invoice includes time entries for numerous individuals other than Mr. O'Keefe. *See generally* [Doc. 50-9 (time entries for "Scott," "Brey," "Keri," "Sam," "Robert," and "Ryan")].[16] Thus, Mr. O'Keefe's lodestar amount alone is **$36,252.50** for 85.3 hours of work. *See* [*id.*].

**Lodestar Calculation.** As mentioned, the Tenth Circuit has established six factors district courts must consider in determining the reasonableness of the number of hours expended in litigation: "(1) whether the tasks being billed would normally be billed to a paying client, (2) the

---

[16] Indeed, although Mr. O'Keefe claims that his paralegal's hourly rate ranges from $165.00 to $175.00, and his legal assistant's hourly rate ranges from $75.00 to $95.00, [Doc. 50-8 at ¶ 4], the invoice includes billing rates that fall outside of those ranges. *See, e.g.*, [Doc. 50-9 at 14 (noting an hourly rate of $325.00 for an individual named "Robert"; *id.* at 16 (noting a $250.00 hourly rate for an individual named "Ryan")]. Moreover, although the Court presumes that references to "Scott" in the invoice refer to Defendant's co-counsel, Scott McLeod, Defendant did not provide any information regarding Mr. McLeod's qualifications.

number of hours spent on each task, (3) the complexity of the case, (4) the number of reasonable strategies pursued, (5) the responses necessitated by the maneuvering of the other side, and (6) potential duplication of services by multiple lawyers." *Robinson*, 160 F.3d at 1281 (quotation omitted). Judges are to evaluate these factors "much as a senior partner in a private firm would review the reports of subordinate attorneys when billing clients whose fee arrangement requires a detailed report of hours expended and work done." *Joseph A. by Wolfe v. N.M. Dep't of Hum. Servs.*, 28 F.3d 1056, 1060 (10th Cir. 1994) (quotation omitted). Although courts are required to exclude hours not reasonably expended from the fee award, they "need not identify and justify every hour allowed or disallowed, as doing so would run counter to the Supreme Court's warning that a 'request for attorney's fees should not result in a second major litigation.'" *Malloy v. Monahan*, 73 F.3d 1012, 1018 (10th Cir. 1996) (quoting *Mares v. Credit Bureau of Raton*, 801 F.2d 1197, 1203 (10th Cir. 1986)); *see also Fox v. Vice*, 563 U.S. 826, 838 (2011) ("The essential goal in shifting fees . . . is to do rough justice, not to achieve auditing perfection.").

As discussed above, Defendant has sufficiently established its entitlement to fees *only* for Mr. O'Keefe's work. The Court has examined the specific tasks charged by Mr. O'Keefe and concludes they are properly chargeable. The Court finds that the most significant factors in determining the reasonableness of the hours expended by Mr. O'Keefe are the third, fourth, and fifth factors, because they relate directly to Mr. Perez's and Mr. Cuesta's misconduct. Through their collective failure to investigate—and then the maintaining of—erroneous claims against Resolute Brewing regarding the restrooms; repeated obfuscation and explicitly inconsistent factual assertions as to the only remaining claim against Resolute Brewing regarding "Access to Goods and Services"; and equivocations, if not outright misrepresentations, regarding the "mostly remediated" barriers at Resolute Brewing, Mr. Cuesta and Mr. Perez exponentially increased the

complexity of the case, requiring Resolute Brewing to pursue new strategies at every turn. Those strategies required additional hours from counsel that should not have been expended in this ADA Title III accessibility suit. *Cf. Stenson v. Edmonds*, No. 18-cv-01968-JLK, 2022 WL 18425654, at \*8 (D. Colo. Dec. 23, 2022) ("While the hours expended are unquestionably high for a low-speed traffic collision, they were the result of Stenson's prevarications and not any disfavored billing practices. . . . Here, the most significant factors are the third, fourth, and fifth, because they relate directly to [the plaintiff's] misconduct. Through his dishonestly [sic], equivocations, and fraud [the plaintiff] exponentially increased the complexity of the case, requiring Defendants to pursue new strategies at every turn. Those strategies required additional hours from counsel that would not normally be expended in a personal injury suit.").

Moreover, the Court finds it appropriate to award expenses related to the Motion for Summary Judgment—namely, travel between September and October 2022, as well as the ordering of the summary judgment hearing transcript—in the amount of **$2,369.58**. *See* [Doc. 50-9 at 35]. Despite Plaintiff's argument that "it is questionable as to why any out-of-town travel was required for this case," [Doc. 54 at 21 (emphasis omitted)], Resolute Brewing represents that it needed to "fly one of its attorneys back from vacation on short notice to attend" the summary judgment hearing. [Doc. 50 at 16].

In sum, the Court determines that the number of hours billed by Mr. O'Keefe—85.3 total billable hours, for a total of **$36,252.50**—is reasonable. In addition, the expenses related to travel for the summary judgment hearing and the hearing transcript, **$2,369.58**, are also reasonable. Consequently, the Court awards Resolute Brewing its fees and expenses in the total amount of **$38,622.08.** Because Defendant requests fees and expenses totaling $85,030.08, the total amount

awarded (**$38,622.08**) reflects a reduction by $46,408—the delta between the amount awarded and the amount charged/requested by Defendant.

## CONCLUSION

The Court reiterates, as it stated at the summary judgment hearing, that "the ADA should be in place to remediate barriers to access for people who have different abilities." [Doc. 47 at 20:25–21:2]. However, regardless of any actual barriers that may have existed at Resolute Brewing or on the Commercial Property, as Mr. Perez acknowledged at the hearing, a court may impose sanctions against an attorney pursuant § 1927 by identifying evidence of an "offender's disregard for orderly process and justice in this case." [*Id.* at 33:23–34:2]. As discussed throughout this Order, the record in this matter establishes Mr. Perez's disregard for the orderly process of justice in this case. *See Hamilton*, 519 F.3d at 1202 ("[A]ny conduct that, viewed objectively, manifests either intentional or reckless disregard of the attorney's duties to the court, is sanctionable." (quotation omitted)). Accordingly, for the reasons set forth herein, **IT IS ORDERED** that:

(1) Defendant Resolute Brewing Company, LLC's Motion for Sanctions, Attorney Fees and Costs [Doc. 50] is **GRANTED IN PART and DENIED IN PART**;

(2) Resolute Brewing Company is awarded its reasonable fees and costs incurred in the defense of this suit in the amount of **$38,622.08**. This amount is in addition to any costs the Court has already awarded to Resolute Brewing in the Order granting its Motion for Summary Judgment, *see* [Doc. 48 at 19; Doc. 49];

(3) The above-referenced amount is assessed against Mr. Perez and his law firm, Garcia-Menocal & Perez P.L., and not against Plaintiff Carlos Cuesta;

(4)     Final Judgment is entered in favor of Resolute Brewing Company, LLC;[17] and

(5)     Plaintiff is **ORDERED TO SHOW CAUSE**, on or before May 31, 2023, as to why the non-appearing Defendants, SMT Holdings LLC and Donepudi Holdings LLC, should not also be dismissed from this action in light of Plaintiff's representation in his November 11, 2022 Status Report that he would be "filing a voluntary dismissal" as to those Defendants. *See* [Doc. 51].

DATED:  May 24, 2023                     BY THE COURT:

                                        Nina Y. Wang
                                        United States District Judge

---

[17] On November 11, 2022, Plaintiff filed a Status Report stating that he would be filing a voluntary dismissal as to the non-appearing Defendants, SMT Holdings LLC and Donepudi Holdings LLC. [Doc. 51].  However, to date, Plaintiff has not done so. he never filed the voluntary dismissal.  In the Order, we grant final judgment in favor of Resolute Brewing.  Under Rule 54(b), "[w]hen an action presents more than one claim for relief . . . or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay."  Fed. R. Civ. P. 54(b).  In light of Plaintiff's representation in the Status Report that he would be dismissing the non-appearing Defendants (despite not having done so), the Court finds that there is no just reason for delay in entering final judgment in favor of Resolute Brewing.